## 51530. GASAWAY v. THE STATE.

CLARK, Judge.

Defendant was convicted of 26 counts of theft by taking. He appeals from the denial of his amended motion for a new trial and from the judgment, enumerating as error the general grounds, the denial of his motion to suppress certain documentary evidence, and the overruling of the two mistrial motions. *Held:*

1. In reviewing the general grounds, we have thoroughly examined the 1495 pages of testimony and documentary evidence which comprise this record. The state's case revealed a fraudulent scheme which superficially appeared complex, but which, on closer inspection was deceptively simple and unsophisticated in comparison with the Ponzi-like schemes which have been devised by unscrupulous imaginative swindlers in recent years.

Defendant was the owner of Gasaway & Company, a sole proprietorship functioning as a real estate holding company and as managing agent for various land purchasing ventures. One such venture, known as Huntland Farms, was the primary subject of inquiry at trial.

Each of twenty-six investors of Huntland Farms purchased one or more shares of a supposed limited

partnership at a cost of $3,132.17 per share. The Huntland Farms brochure and the Articles of Limited Partnership of Huntland Farms, signed by each investor, stated that the investment money was to be used for the purchase of 57 acres of land located in Alpharetta, Georgia and owned by T. T. Wright. (This gentleman was not a party to appellant's contrivance.) But the $104,000 invested in this venture was never used for its intended purpose. Nearly half of the investment funds was put into the general account for Gasaway & Company rather than the Huntland Farms account. And the money which was deposited in the Huntland Farms account did not remain there long. By the time defendant's plot was uncovered by his employees, all of the business accounts were depleted, as was defendant's personal account, and the hundreds of thousands of dollars which passed through these accounts was gone. None of the money provided for the purchase of the Alpharetta property had ever been used for that purpose and no earnest money had ever been transferred to the owner of that property.

An examination of the voluminous documentary evidence indicates that most of the investors' money was used for defendant's private purposes. Numerous checks from the Huntland Farms account were issued to cash and endorsed by defendant. Some of the money was transferred to the Gasaway & Company account, but was used extensively by defendant for personal rather than business purposes. Other funds from the Huntland Farms account were transferred directly to defendant's personal account.

During the period of time in which shares of this venture were being sold, the defendant purchased a home with a property valuation modestly estimated at $500,000. To take care of his newly acquired estate, he employed a household staff, an interior decorator, cooks, gardeners, and a chauffeur. He leased four automobiles, including two Cadillac El Dorados and a Cadillac limousine. Much of defendant's extravagant life style was financed, the record shows, by money improperly transferred from the Huntland Farms account.

At trial, defendant asserted he had "borrowed" the money and that his execution of a personal promissory

note to Huntland Farms for $67,000 and another such document to pay "all ventures (limited partnerships) sponsored by Gasaway and Company... in an amount not to exceed $150,000" plus 8% interest from the document's date evidenced his honest intentions. Defendant's labeling of his acquisition of the money as a "loan" provides no more of a defense to this crime than does a captured bank robber's statement that he intended to repay the bank (with interest, of course). In both instances, the crime is complete upon the unlawful appropriation of the money. Defendant's promissory notes, which allegedly showed his lack of intent to deprive the investors of their money, were not made until after the scheme had been discovered. They were of questionable monetary value and dubious legality. Moreover, the articles of limited partnership (which were never filed as required by statute) gave defendant no authority whatsoever to use the investment money for his own purposes although he testified he could do so in his capacity as "Managing Partner." To the contrary, the articles specifically prohibited any use of the money for purposes not connected with the acquisition of the Alpharetta property.

"A person commits theft by taking when... being in lawful possession thereof, [he] unlawfully appropriates any property of another with the intention of depriving him of said property, regardless of the manner in which said property is taken or appropriated." Code § 26-1802. It is clear that the evidence presented supported defendant's conviction of this crime. The general grounds are thus without merit.

2. Defendant contends that the trial court erred in refusing to suppress certain business records which were delivered to the district attorney's office by defendant's secretary and bookkeeper, Mrs. Pigott. Initially, we wrote that the protections of the Fourth Amendment apply only to the unreasonable searches and seizures of governmental agents. "[H]owever unreasonable a search by a private person may be, absent participation by governmental agents the Fourth Amendment is totally uninvolved and the evidence, though illegally seized by private individuals, is admissible in a criminal

prosecution. . . . In sum, because the Fourteenth Amendment, through which the Fourth Amendment applies to the states, requires state action, absent some state action in a search context there can be no Fourth Amendment violation." *State v. Young,* 234 Ga. 488, 489 (216 SE2d 586).

Defendant attempts to invoke the sanctions of the Fourth Amendment by arguing that Mrs. Pigott was acting under the supervision and direction of an investigator of the district attorney's office. In this regard, defendant places reliance upon language contained in an opinion by the Oklahoma Court of Criminal Appeals in Williams v. State, 501 P2d 841, 845: "The Fourth Amendment cannot be evaded by the use of a private person to do what an officer cannot do. Evidence obtained by a private person is nevertheless incompetent where the officers, through suggestion, order, or request, made the private person their agent for the purposes of criminal investigation, or where the officers participate in the search and seizure."

We recognize the validity of this quoted legal rule. See Byars v. United States, 273 U. S. 28 (47 SC 248, 71 LE 520). Nevertheless, we find that the record of this case contains no facts to support defendant's underlying assertion that the defendant's employee was acting as an agent of the district attorney's office. As defendant's bookkeeper, she apparently was the first person to discover that the Huntland Farms' account had been depleted. After informing the company's salesmen of the missing funds, she was instrumental in setting up several business meetings in an attempt to salvage the investors' money. When it became apparent to her that defendant was either unable or unwilling to restore the Huntland Farms account, she went to the district attorney's office and swore out a complaint.

The transcript discloses that Mrs. Pigott obtained possession of the business records prior to her visit at the district attorney's office and that the records were in her car during this meeting. The seizure (which might properly be called the "removal") had thus been accomplished prior to any involvement by state authorities. These facts are consistent with Mrs. Pigott's

assertion at the suppression hearing that the delivery of the books to the authorities was her own decision.

The trial transcript supports the conclusion that Mrs. Pigott removed the records and delivered them to the district attorney on her own initiative. As the defendant has failed to show that his Fourth Amendment rights were violated by unlawful government intrusion, the trial court correctly refused to apply the exclusionary sanction.

3. Defendant's third enumeration alleges error in the overruling of his motion for a mistrial made during the testimony of Tommy Parker. This witness was an investor in Huntland Farms and had also performed some unrelated contractual work for defendant's company. The mistrial motion was made after Parker stated, in reply to the prosecutor's inquiry, that he had not been paid for the contract work.

"The trial court has a broad discretion in passing on motions for mistrial, and its ruling will not be disturbed by the appellate court unless it appears that there has been a manifest abuse of discretion and that a mistrial is essential to the preservation of the right to a fair trial." *Jones v. State,* 128 Ga. App. 885, 886 (198 SE2d 336). As the trial court excluded this testimony and instructed the jury to disregard it, we can find no abuse of discretion. See *Wingfield v. State,* 231 Ga. 92, 95 (200 SE2d 708); *Young v. State,* 226 Ga. 553 (4) (176 SE2d 52). Moreover, the witness had previously testified to this same fact without objection by defense counsel. The repetition of this matter could not, therefore, have been harmful to defendant. *Thomas v. State,* 128 Ga. App. 32 (1) (195 SE2d 681).

4. Defendant's final enumeration alleges error in the denial of his mistrial motion during the trial testimony of Mrs. Pigott. While testifying as to her reasons for going to the district attorney's office, this witness offered hearsay evidence concerning defendant's use of venture properties as collateral for a personal loan. The trial judge instructed the jury that this testimony was hearsay which the court was admitting for the limited purpose of explaining the witness' conduct. This ruling was correct. *Phillips v. State,* 206 Ga. 418, 419 (57 SE2d 555); *Coleman v. State,* 124 Ga. App. 313, 314 (2) (183 SE2d 608).

*Judgment affirmed. Bell, C. J., and Stolz, J., concur.*

ARGUED JANUARY 12, 1976 — DECIDED JANUARY 30, 1976 —
REHEARING DENIED FEBRUARY 17, 1976 —

*K. Reid Berglund,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet,
H. Allen Moye, Assistant District Attorneys,* for appellee.