## A01A1105. GORE v. THE STATE.
(554 SE2d 598)

SMITH, Presiding Judge.

Jessie Gore was convicted of three counts of sexual battery and one count of contributing to the delinquency of a minor.[1] He appeals, following the denial of his motion for new trial. We find no error, and we affirm.

1. Gore contends that the State failed to produce sufficient evidence of criminal intent and therefore that the trial court erred in denying his motion for directed verdict. We do not agree.

The State presented the testimony of the three victims: the daughter of Gore's girlfriend and two of the daughter's 14-year-old friends. The girlfriend's daughter, S. W., was 14 or 15 at the time of the incidents. S. W. testified that Gore often pinched her on her breasts and buttocks. Although she thought Gore was just "playing around" at first, she testified that she began to feel uncomfortable. She stated that he once sat on her lap, facing her and straddling her, on the sofa in their apartment. In addition, one time he tried to remove her towel after she had stepped out of the shower. On another

---

[6] (Citations and punctuation omitted.) *Jacobson v. State*, 201 Ga. App. 749, 751 (2) (b) (412 SE2d 859) (1991).

[1] He was acquitted of three counts of child molestation.

occasion, he lay down beside her on the floor and pinched her, and she "told him to get up and he wouldn't move out of the way." He stayed beside her for "a minute or so," and he "pinched so hard it just hurt."

She testified that after she reported the incidents, Gore sat on her on the couch and told her that he could "do this" no matter what anyone said and that after he got up, he pinched her on the breast. We note that one witness, a man who lived in the apartment with his girlfriend, Gore, S. W., and her mother, testified that he saw Gore grab S. W. on her breasts or buttocks, that their playing went "too far," and that S. W. did not "like it."[2] This witness twice saw Gore lying on top of S. W., and he testified that she would get angry and go to her room and sometimes would cry about this behavior. Gore stated that he did not remember touching S. W.'s breasts and perhaps only touched her buttocks "in passing," but he denied making sexual advances.

The other two victims, twins, often visited S. W. on weekends. They, as well as S. W., testified that Gore often purchased alcohol for them, and the girls would become intoxicated. Sometimes they would drink until they passed out. Gore drank with the girls but did not get drunk. Evidence was presented that he pinched the twins on their buttocks and lay beside or on top of each of them on the couch. He also sat on one of the twin's buttocks and massaged her back. This happened at least twice, once on the floor and once on the bed. One twin testified that when they would arrive, he would hug her very tightly and would press up against her with his chest and abdomen. Both acknowledged feeling uncomfortable with the manner in which Gore touched them. Gore admitted giving a massage to one of the twins but said he only rubbed her legs. One of these victims saw Gore pinching S. W. on the buttocks and chest area and testified that S. W. did not like this behavior.

Whether a defendant had the requisite intent to commit a crime is particularly a question of fact for the jury, to be determined "after considering all the circumstances surrounding the acts of which the accused is charged, including words, conduct, demeanor, and motive." (Citations and punctuation omitted.) *Foster v. State*, 216 Ga. App. 26-27 (1) (453 SE2d 482) (1995). A trial court does not err in refusing to direct a verdict when, considering "the evidence in the light most favorable to the prosecution, a rational trier of fact could find the elements of the crime, including intent, beyond a reasonable doubt. [Cit.]" *Touchton v. State*, 210 Ga. App. 700 (1) (437 SE2d 370) (1993).

Gore argues that the evidence showed only that he touched the

---

[2] This witness's girlfriend was S. W.'s older sister.

victims while he and the victims "were engaged in playful, mutual teasing." While some evidence was presented that Gore and the victims were "teasing" one another, construing the evidence in favor of the prosecution, other evidence was presented that he touched them on their "intimate parts" without their consent, as required by OCGA § 16-6-22.1 (b). S. W.'s testimony clearly showed that Gore touched her without her consent and over her protests, and the twins expressed that they were uncomfortable with Gore's behavior. The trial court did not err in denying Gore's motion for directed verdict.

2. Gore contends that the trial court erroneously admitted privileged information disclosed by him to a counselor. This enumeration relates to testimony by an "associate professional counselor" who worked with S. W. and her family, at the request of the juvenile court, after S. W. was placed on probation by that court. During one session, Gore told this witness that he had gone to a dance with one of his own daughters and "described how during the night at the dance he had kissed his daughter in a way where others thought he was his daughter's boyfriend instead of father." Gore contends that this statement was privileged. We find no basis for reversal. Gore did not object to this testimony on the basis of privilege and therefore has waived appellate review of this argument. "In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (Footnote omitted.) *Trotter v. State*, 248 Ga. App. 156, 157-158 (2) (546 SE2d 286) (2001).

We also note that, contrary to Gore's argument, the testimony was not protected by OCGA § 43-39-16, which provides that "communications between a licensed psychologist and client are placed upon the same basis as those provided by law between attorney and client." The record shows neither that this was a "licensed psychologist" nor that Gore was her client.

3. In two enumerations, Gore complains about testimony introduced by the State concerning his behavior with his own daughters. He contends that the testimony was erroneously admitted "for any purpose" and should have been accompanied by a limiting instruction concerning the admissibility of similar transactions. Under the unusual circumstances of this case, we find no reversible error.

Gore's arguments relate to the testimony of two witnesses, Tracy Luallen and Shannon Bond. Gore contacted Luallen, the caseworker from the local Department of Family & Children Services who investigated S. W.'s initial complaint, after Luallen requested that he do so, even though his attorney instructed him not to talk with Luallen. Luallen testified that she had spoken with his attorney, who had told her that he did not want Gore to make any statements to her. She

stated that Gore told her he had been instructed not to give a statement by his attorney as well, "but he felt like he needed to speak with me." According to Luallen, she "just listened to him speak" and did not question him. He told her that he was "very close" to his own daughters and that when they were out together, people would think that one of them was his girlfriend. "He said that this was because of the way that he walked with his arm around her and that he loved them so much that he loved to touch them."

Bond, the counselor who met with S. W. and her household at the request of the juvenile court, testified concerning Gore's statements about his relationship with his own children. He described love to Bond "as a passion for how to raise children" and told her about a school dance when "he had kissed his daughter in a way where others thought he was his daughter's boyfriend instead of father." Gore clarified the details of this event during his testimony. He stated that he had sneaked his underage daughter into a bar and that he "gave her a little kiss." Friends who observed this incident thought he was her boyfriend.

The State filed a notice of similar transactions "out of an abundance of caution" concerning the testimony of these two witnesses, but the prosecutor believed the testimony to be relevant to Gore's intent and therefore admissible "in the main part of the case anyway" regardless of whether the evidence was admissible as similar transactions. Gore "strenuously" objected to the evidence. The prosecutor argued that the evidence was relevant to "the kind of relationship he had with his own children and what he wanted for [one of the victims]."

Noting that the prosecutor may have had a "sinister purpose" for the evidence, the trial court stated that the evidence could "be taken another way. It could be exculpatory. The statements could show that he did not form any criminal intent in his touching of" the victims. The court went on to find that defense counsel could make the "misguided" argument that Gore believed himself to be involved in a proper relationship and therefore was not engaging in criminal acts. The court found the statements to be "admissible from both perspectives to explain conduct" rather than as evidence of similar transactions. And most importantly, the trial court stated that it would not instruct the jury on the law of similar transactions "unless the defendant specifically wants it, because it would imply that I think that they are criminal; that . . . these incidents amounted to criminal acts against his own daughters and I'm not going to say that and I don't even want to imply that." It does not appear that defense counsel requested an instruction concerning the admissibility of similar transactions.

(a) Gore contends that the trial court erroneously failed to give a

limiting instruction concerning any testimony that he had "snuck" one of his daughters into a bar, as this testimony bore on the charge of contributing to the delinquency of a minor. But as discussed above, he did not request such an instruction and therefore cannot now argue that the trial court failed to give it. See *State v. Belt*, 269 Ga. 763, 764 (505 SE2d 1) (1998).

(b) In a more general enumeration, as best we understand his arguments, Gore contends that both statements constituted evidence of irrelevant acts toward his own mature biological daughters and had no probative value with respect to the allegations against him. We find no basis for reversal. The trial court astutely observed that the statements, one of which was voluntarily made during the course of the investigation despite defense counsel's admonition to Gore, could have been exculpatory. A jury might have found them to bear on Gore's intent simply to show a strong parental type of love to his girlfriend's daughter. And again, Gore did not request the court to admit the evidence for any limited purpose. Instead, even after the trial court indicated that it might give a similar transaction charge if desired by Gore, no such charge was requested. He therefore cannot now argue that the trial court allowed the evidence "for any purpose" when he failed to take the opportunity afforded him to request a charge concerning the limited purposes for which similar transactions may be admitted.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED SEPTEMBER 5, 2001.

*Phyllis V. Harris*, for appellant.
*Tambra P. Colston, District Attorney, Martha P. Jacobs, Assistant District Attorney*, for appellee.