### A02A0279. QUINN v. THE STATE.
(566 SE2d 450)

SMITH, Presiding Judge.

After pleading guilty to two counts of aggravated assault and firing a pistol at another, Mark Quinn was sentenced under the First Offender Act, OCGA § 42-8-60. Subsequently, Quinn was convicted of the offense of possession of a firearm by a first offender probationer. Quinn's motion for new trial as amended proved unsuccessful. In this appeal, Quinn challenges the sufficiency of the evidence, three evidentiary rulings by the trial court, and the court's purported failure to give limiting instructions sua sponte. Quinn also contends that his trial counsel provided ineffective assistance. Because we find no merit in the claims of error asserted, we affirm.

Construed to uphold the jury's verdict, the evidence shows that from 1994 until early 1995, Quinn rented a room and a storage closet at the home of his physician, Shirley Butler, M.D. As a result of a shooting incident that occurred at Dr. Butler's house in February 1995, Quinn was convicted of two counts of aggravated assault for firing a pistol at two individuals. On April 15, 1996, the trial court con-

ferred first offender treatment upon Quinn, sentencing him to five years confinement with the proviso that upon service of two years, he could serve the balance on probation.

After serving two years in prison, Quinn again sought help from Dr. Butler. On the day of his release, April 15, 1998, Quinn contacted Dr. Butler and told her that he had no place to go and asked for a ride from the bus station. When Dr. Butler met Quinn at the bus station, she told him that he could no longer live at her house but could retrieve his clothes and personal effects from storage there. Quinn became angry. He threatened to shoot Dr. Butler in the head and to sodomize her daughter. Alarmed by his threats, Dr. Butler agreed to let him stay for the night. Later that same night, while returning from the kitchen, Dr. Butler saw Quinn removing some guns from a safe inside the storage closet. Dr. Butler denied ever having seen these handguns before. In the morning, when Dr. Butler reiterated to Quinn that he could not live at her home, Quinn became so angry that Dr. Butler became frightened. She testified that she "called the probation department." After work, Dr. Butler called police after seeing Quinn outside her home. By the time the police arrived, Quinn had left.

In the early morning hours of April 17, after her daughter reported hearing a noise, Dr. Butler summoned police. When she told the responding officers about Quinn and that there was "something in the closet that they needed to see," she was told that a warrant would be needed. Although the lock on the closet could be operated by key or by combination, as Dr. Butler testified, she did not have a key or know the combination. She decided to pry the lock open herself and using a small axe did so. Officer W. A. Parton testified that when the closet door opened, he saw two shotguns, a large stand-up safe, ammunition, and gun paraphernalia.

Officer Craig Kailimai, a gun unit member, was asked to come to the scene. Kailimai noted that a Steyr-AUG assault rifle and a chrome pump shotgun were next to a large safe that had a small safe on top of it. After learning about Quinn's threats and conducting a computer check of Quinn, Kailimai left to obtain a search warrant for Quinn's personal property at the residence. Later, after procuring the warrant, while awaiting the arrival of a locksmith, Kailimai noticed a third safe in the bedroom where Quinn had slept. Inside this safe, which was not locked, were five fully loaded handguns, holsters, and magazines. Secreted inside the large safe were assault rifles, shotguns, ammunition, holsters, magazines, and numerous handguns. All of the guns were fully loaded and ready to fire. In all, investigators discovered 63 handguns, 17 long guns including assault rifles, rifles, and shotguns, thousands of rounds of ammunition, handgun holsters, rifle slings, and various magazines or clips.

1. Quinn contends that the State failed to prove the requisite elements of the crime, in that the State failed to prove that he was a first offender probationer on the date charged in the indictment.

OCGA § 16-11-131 (b) punishes as a felony offense the act of receiving, possessing, or transporting any firearm by a person who is a first offender probationer.[1] The crime therefore is committed when a person who is currently on probation as a first offender possesses a firearm. *Williams v. State*, 238 Ga. App. 310, 311 (520 SE2d 466) (1999). Here, the evidence shows without dispute that Quinn had been sentenced under the First Offender Act and received a five-year felony sentence to commence on April 15, 1996, and he was released from prison on April 15, 1998. Almost immediately after his release, Quinn was observed handling guns inside a closet equipped with what one officer described as "a very high tech lock." Only Quinn had access to the locked closet. An additional five handguns were discovered in a small safe in his bedroom. While the possession of a single firearm by a first offender probationer suffices, in this case, Quinn knowingly exercised direct physical control over numerous guns. See *Simpson v. State*, 213 Ga. App. 143, 144 (1) (444 SE2d 115) (1994). This evidence was sufficient to sustain his conviction.

Quinn's reliance upon *Williams*, supra, is misplaced. In *Williams*, unlike here, there was a fatal variance between the indicted offense and the evidence adduced at trial. In that case, Williams had been indicted as a first offender probationer, but the evidence unequivocally established that Williams was not a first offender probationer because his probation had been revoked as the result of a subsequent felony conviction. Id. at 310. Here, in contrast, Quinn did not have an intervening felony conviction.[2]

Quinn asserts that the State failed to prove that in April 1998, he was a "first offender probationer" and that "the probation had commenced and had not ended." That argument is disingenuous. Quinn's eligibility for discharge as a first offender could not have arisen until April 15, 2001, and then, only upon satisfaction of the conditions of probation. See *Davis v. State*, 239 Ga. App. 318, 319 (2) (521 SE2d 368) (1999), rev'd on other grounds, 273 Ga. 14 (537 SE2d 663) (2000). These events did not occur.

---

[1] OCGA § 16-11-131 was amended effective July 1, 2000, to pertain to felony first offenders and to require enhanced punishment for probationers who have committed forcible felonies. See Ga. L. 2000, p. 1630, § 5.

[2] Quinn was also indicted for terroristic threats and possession of a firearm by a convicted felon. The trial court entered an order dismissing the latter count because the State had no evidence that Quinn's probation had ever been revoked. After the defense sought a bifurcated trial on the terroristic threat count and the possession of a firearm by a first offender probationer, the State agreed to dead docket the terroristic threats charge.

2. Quinn asserts that the trial court erred in refusing to enforce his proposed stipulation that he was, in fact, a first offender probationer. On the contrary, the State was not obligated to accept the offer and, within the rules of evidence, had the right to present fully its own case. See *Null v. State*, 261 Ga. 180, 181 (4) (402 SE2d 721) (1991).

3. In two overlapping enumerations, Quinn claims that the trial court erred in admitting over objection references to his prior crimes without first weighing the probative value against the detrimental effect. He argues that the trial court should have considered whether to redact the references to the aggravated assaults from the certified copy of the indictment and sentencing sheets. Relying upon *Old Chief v. United States*, 519 U. S. 172 (117 SC 644, 136 LE2d 574) (1997), Quinn claims that any reference to the actual prior offenses should have been stricken from the exhibit.

*Old Chief* involved a federal prosecution for a violation of 18 USC § 922 (g) (1), which prohibits the possession of a firearm by anyone with a prior felony conviction. To avoid disclosure of the nature of his prior assault conviction, Old Chief offered to stipulate to the prior conviction element of the crime. The federal prosecutor refused to join in the stipulation. Id. at 177.

The United States Supreme Court granted review and framed the issue as the scope of a trial judge's discretion under Rule 403 of the Federal Rules of Evidence. *Old Chief*, supra at 180. Rule 403 authorizes the exclusion of relevant evidence when its " 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " Id. at 180. The Supreme Court held that under Rule 403, in a prosecution in which proof of a prior conviction is an element, a district court abuses its discretion by rejecting a defendant's offer to admit to the prior judgment and by permitting over objection the introduction of the full judgment record. Id. at 190-191. The Supreme Court explicitly limited its holding "to cases involving proof of felon status." Id. at 183, n. 7.

But the United States Supreme Court's interpretation of Rule 403 of the federal rules is not binding on this court as to the admissibility of similar crimes or extrinsic acts evidence. *Sisson v. State*, 232 Ga. App. 61, 65 (3) (b) (499 SE2d 422) (1998); but see *Butler v. State*, 270 Ga. 441, 449 (8) (511 SE2d 180) (1999) (holding of *Old Chief* may be applicable to situation where a defendant offers to stipulate to his legal status). Nevertheless, under our rules of evidence, the record does not show that the trial court conducted any determination as to whether the probative value of the evidence at issue outweighed its prejudicial effect. See *Hicks v. State*, 232 Ga. 393, 397 (207 SE2d 30)

(1974). Instead, the trial court apparently assumed that evidence of the prior offenses HAD to be admitted. This was an error of law. "The general rule is that evidence of an independent crime is never admissible unless the prejudice it creates is outweighed by its relevancy to the issues on trial." *Sisson*, supra at 66 (3) (b).

Although the State had to prove Quinn's status as a first offender probationer, proof of the precise crimes underlying his prior conviction was not an element of the crime. See OCGA § 16-11-131 (b). In other words, while Quinn's status as a first offender probationer constituted an essential element of the indicted offense, admission of the nature and type of criminal offenses for which Quinn received first offender treatment should have been weighed against the prejudicial effects. See id. Mistakenly believing that the evidence had to be allowed, the trial court made no determination that the extrinsic act evidence was substantially relevant for an appropriate purpose so as to outweigh its prejudicial impact. See *Brown v. State*, 197 Ga. App. 155-156 (398 SE2d 34) (1990). Under the circumstances of this case, however, because of the overwhelming evidence against Quinn, we find that the admission of the unredacted exhibit did not constitute reversible error. *Robinson v. State*, 263 Ga. 424, 425 (2) (b) (435 SE2d 207) (1993).

4. Quinn complains that the trial court erred by not exercising its own initiative to give limiting instructions to the jury both when State's Exhibit 1 (indictment and sentencing sheets) was introduced and when the general charge was given.

Quinn's failure to request a limiting instruction when the evidence was introduced forecloses appellate review of that issue. See *Gore v. State*, 251 Ga. App. 461, 465 (3) (a) (554 SE2d 598) (2001). Having examined the general instruction, we find that the charge as a whole substantially presented the issues in a way unlikely to confuse or mislead the jury. See *Callaway v. State*, 230 Ga. App. 369, 370 (2) (496 SE2d 349) (1998).

5. Citing four grounds, Quinn claims that he received ineffective assistance of counsel before and during his trial. To prevail on an ineffectiveness claim, an appellant must show that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. See *Elrod v. State*, 222 Ga. App. 704, 707 (3) (475 SE2d 710) (1996). Quinn has failed to satisfy those criteria.

Quinn contends that his trial counsel should have pursued a motion to suppress evidence of the guns. He argues that Dr. Butler acted in concert with police to violate his constitutional rights or, in the alternative, that Dr. Butler acted as a government agent in breaking into the locked storage closet. Asserting that he had "an expectation of privacy in the locked safe in a locked closet," he claims that his trial counsel erred by not moving to suppress the contents of

the closet. Quinn points out that the Fourth Amendment cannot be evaded by the use of a private individual to accomplish what a law enforcement officer cannot. See *Gasaway v. State*, 137 Ga. App. 653, 656 (2) (224 SE2d 772) (1976).

Because the failure to file a motion to suppress does not constitute *per se* ineffective assistance of counsel, an appellant must make a "strong showing" that the evidence would have been suppressed had the motion been filed. *Roberts v. State*, 263 Ga. 807, 809 (2) (e) (439 SE2d 911) (1994). Here, Quinn's argument is fatally flawed for two reasons. First, Quinn denied having any ownership interest in the guns. As attested to by his trial counsel, Quinn told him that he had given the guns to Dr. Butler and had relinquished all rights to them. Quinn's counsel testified that he did not file a motion to suppress because "I took my client at his word." Dr. Butler testified at trial that Quinn had not given the guns to her, and no evidence showed otherwise. Second, even assuming arguendo that Quinn could have prevailed on a motion to suppress the evidence obtained from the storage closet, it would not have changed the result. Officer Kailimai testified that he found the five guns in the unlocked bedroom safe after he obtained the search warrant.

The record does not indicate that the search warrant was challenged.

Nor does the record reflect deficient performance by Quinn's trial counsel during voir dire. Quinn complains that his counsel failed to object to biased remarks and inquiry by the prosecutor about guns and gun ownership. The transcript belies this claim. During voir dire, both defense counsel and the prosecutor extensively probed the topics of gun ownership and distaste for guns. Both also inquired about the constitutional right to bear arms and whether that right should be circumscribed for those with felony convictions. Compare *Bell v. State*, 263 Ga. 776, 777 (439 SE2d 480) (1994) (prosecutor's injection into her closing argument of extraneous and prejudicially inflammatory material that had no basis in evidence necessitated reversal). No error has been shown.

Quinn complains that his counsel failed to object during closing argument to comments about his prior first offender convictions and his recent release from prison. But because Quinn was being tried for violation of OCGA § 16-11-131 (b), the State was required to show that Quinn, was in fact, a felony first offender probationer. See *Williams*, supra at 310. In proving its case, the State was entitled to establish that almost immediately after his release from jail, Quinn had possession of firearms. Quinn's trial counsel testified that after the trial court ruled that information about the aggravated assaults was admissible, he made a conscious decision not to object during the State's closing to avoid highlighting that information. Such a strate-

gic decision did not constitute ineffectiveness. See *Hayes v. State*, 236 Ga. App. 617, 620 (4) (b) (512 SE2d 294) (1999).

Finally, Quinn contends that his counsel failed to object to the State's improper bolstering of its witness. He claims that the prosecutor impermissibly bolstered Dr. Butler's credibility by arguing that she was a "respected" doctor who sacrificed a lucrative practice to serve as a general practitioner "on the west side of town where it's sorely needed." These remarks do not constitute improper bolstering. Compare *Bolden v. State*, 272 Ga. 1 (525 SE2d 690) (2000) (statement by solicitor-general that he thought police officer was very credible constituted reversible error). Here, the prosecutor made no statement about his personal belief as to the veracity of this witness. Since the trial court's finding that Quinn was not denied effective assistance of counsel was not clearly erroneous, it must be affirmed. *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996).

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED JUNE 12, 2002.

*John W. Kraus*, for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.