## A03A0151. SIMMONS v. THE STATE.
(585 SE2d 93)

MIKELL, Judge.

A jury convicted Bernard Simmons of five counts of aggravated assault, burglary, and possession of a firearm/knife during commission of a felony. Following the denial of his motion for new trial, Simmons appeals, challenging the sufficiency of the evidence, the standard utilized by the trial court on his motion for new trial, and the trial court's failure to ascertain the competency of several child witnesses. Simmons also contends that both his trial counsel and the attorney who represented him on the motion for new trial were ineffective. Finding no error, we affirm.

> On appeal the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. Moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

Viewed most favorably to support the jury's verdict, the evidence shows that two masked men kicked in the front door of an apartment at approximately 8:30 p.m. on January 10, 2000. One of the men carried a gun and the other, a knife. There were two children in the living room: S. A., who was 11 years old at the time of trial, and her younger friend, S. M. S. A. testified that the man carrying the gun pointed it at them and threatened to kill them if they screamed.

S. A.'s sister, T. B., who was 14 years old at the time of trial, testified that she, her brother, C. S., and her cousin, Q. V., were watching

---

[1] (Footnotes omitted.) *Freeman v. State*, 257 Ga. App. 232 (570 SE2d 669) (2002).

television in her mother's bedroom when the incident occurred. T. B. testified that the men kicked down the bedroom door, entered the room, carrying a knife and a gun, pointed the gun at her, and asked for her stepfather. T. B. further testified that she recognized the man carrying the gun by his clothes, fatigue pants and a black ski mask, and eyes because she had seen him earlier that day playing basketball with C. S. and Q. V. T. B. knew the man as "Bernie" and when asked to identify the perpetrator during trial, she pointed to the defendant.

Q. V., T. B.'s cousin, who was 15 years old at the time of trial, testified that he heard someone kick in the front door of the apartment; that the perpetrators kicked in the bedroom door, where he was watching television with his cousins; that the men carried a gun and a knife; that the man carrying the gun had oriental-looking eyes; and that Q. V. recognized him because they had played basketball together earlier that day. Q. V. identified the defendant in the courtroom. C. S., T. B. and S. A.'s brother, who was 13 years old at the time of trial, gave the same version of events as T. B. and Q. V. C. S. also testified that after the men left, he ran out of the house and that "Bernie" caught him and pointed the gun at his head. In addition, C. S. knew the second perpetrator as "Keeter."

T. B., S. A., and C. S.'s mother, Tania Robinson, testified that she had not given anyone permission to enter her home that evening. Officer Ezell Brown investigated the incident and testified that the entry door and bedroom door appeared to have been forced open; that Robinson's children's stepfather, Brian Johnson, was known to be involved in illegal drug activity; that all three children who were in the bedroom identified Simmons from a photographic lineup; and that Simmons was arrested in Chicago.

The defendant's sister, Angela Simmons, testified that Simmons had lived with her for almost three months before the crime occurred. Angela's apartment was approximately a quarter of a mile from Robinson's apartment. Angela testified that Simmons could barely walk at the time of the incident because he had been injured two days earlier in a fight; that he spent the entire day with their cousin, Kedrick Perry; that Simmons left home that evening to go to a party; and that on the very next day, he returned to Chicago where their parents lived because she had been complaining about him to her mother.

1. In his first enumeration of error, Simmons argues that his motion for new trial should have been granted for the following reasons: (a) the evidence was insufficient; (b) the trial court used the incorrect standard on his motion for new trial; (c) the trial court failed to assess the competency of the witnesses; and (d) trial counsel was ineffective. We disagree.

(a) Simmons argues that his convictions should be reversed because the state's case was based only upon circumstantial evidence, which did not exclude every reasonable theory other than his guilt. Simmons is incorrect. The positive identifications of Simmons by the witnesses constituted direct, rather than circumstantial, evidence of his guilt.[2] The witnesses were able to describe Simmons' clothing, hairstyle, and his eyes. "A criminal conviction can be based on an eyewitness' general description of the perpetrator."[3] Three of the victims also positively identified Simmons from an out-of-court photographic lineup[4] and during the trial. Viewed in the light most favorable to support the verdict, the evidence shows that Simmons unlawfully entered Robinson's residence with intent to commit a felony, aggravated assault, therein and was in possession of a gun while doing so. Accordingly, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Simmons committed the offenses charged.[5]

(b) In his motion for new trial, Simmons raised the general grounds that the verdict was contrary to and strongly against the weight of the evidence. Simmons argues that when considering his motion, the trial judge incorrectly applied the standard reserved for appellate courts instead of exercising his discretion. In support of his argument, Simmons relied on the trial judge's comments that "I don't believe I can just step in and be the fact finder and supplant the jury. . . . I got to view the evidence in a way favorable to uphold the verdict."

We agree with Simmons that the trial judge has a duty to exercise his discretion when determining whether a new trial is warranted under either ground set forth by Simmons.[6] In doing so, the trial judge is permitted to act as a thirteenth juror.[7] However, in this case, despite the court's colloquy with counsel, it appears from the court's order that it exercised its discretion. Furthermore, even if portions of the trial court's comments during the hearing were incorrect, "harm, as well as error, must be shown for reversal."[8] In light of the overwhelming evidence of Simmons' guilt, no harm can be shown.

---

[2] *Johnson v. State*, 236 Ga. App. 252, 256 (3) (511 SE2d 603) (1999), aff'd, 272 Ga. 254 (526 SE2d 549) (2000).

[3] *Gresham v. State*, 246 Ga. App. 705, 707 (2) (541 SE2d 679) (2000).

[4] Simmons did not object to the introduction of the photographic identification evidence.

[5] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[6] See *Witt v. State*, 157 Ga. App. 564, 565 (2) (278 SE2d 145) (1981) ("The denial of a new trial on the ground that the verdict is contrary to the evidence addresses itself only to the discretion of the trial judge."); *Dixon v. State*, 192 Ga. App. 845, 846 (386 SE2d 719) (1989) (the trial judge alone has discretion to grant a new trial where the defendant claims the verdict is against the weight of the evidence). See also OCGA § 5-5-21.

[7] *Ricketts v. Williams*, 242 Ga. 303, 304 (248 SE2d 673) (1978).

[8] (Punctuation and footnote omitted.) *Martinez v. State*, 258 Ga. App. 102, 104 (1) (d) (572 SE2d 748) (2002).

(c) Simmons next argues that his motion for new trial should have been granted because the trial court failed to ascertain the competency of child witnesses S. A. and C. S., who were under the age of 14. "There was no objection on that ground in the trial court, so no issue regarding the witness[es]' competency is properly before this court."[9]

(d) Simmons contends that his trial counsel was ineffective because he failed to object to the competency of the state's child witnesses, request a jury charge as to witness competency, and cause a complete transcript to be prepared.

> In order to prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient and (2) that the defendant was prejudiced by the deficient performance — i.e., that there was a reasonable probability that the trial would have turned out differently but for counsel's deficient performance. A finding by the trial court that the defendant did not receive ineffective assistance of counsel will be affirmed unless clearly erroneous.[10]

"A court considering a claim of ineffectiveness of counsel is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one."[11]

(i) Simmons' trial counsel's failure to object to the competency of the witnesses who were under the age of 14 was not evidence of a lack of professional competence by the lawyer. Because of the 1989 amendment to OCGA § 24-9-5, the age of a child witness to a crime is immaterial. In a criminal case a child witness is statutorily competent, and an objection by counsel would have been improper.[12]

(ii) Trial counsel's failure to request a jury instruction on the competency of the child witnesses does not render his performance ineffective. "The competency of a witness shall be decided by the court."[13] Thus, requesting that the jury be charged on witness competency would not have been appropriate. A fortiori, the failure to do so cannot serve as the basis for an ineffectiveness claim.[14]

---

[9] (Citations omitted.) *Keasler v. State*, 165 Ga. App. 561 (1) (301 SE2d 915) (1983).

[10] (Citation and punctuation omitted.) *Abney v. State*, 240 Ga. App. 280, 282-283 (3) (523 SE2d 362) (1999).

[11] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

[12] See OCGA § 24-9-5 (b).

[13] OCGA § 24-9-7 (a).

[14] We note that the trial court properly charged the jury on witness credibility.

(iii) Lastly, Simmons contends that his trial counsel was ineffective because he did not have the court reporter transcribe the opening or closing arguments or voir dire. "However, [Simmons] does not show how the transcription of these events would have benefitted him, and his failure to demonstrate harm is fatal to his claim."[15]

2. Simmons argues for the first time on appeal that the attorney who represented him at the hearing on the motion for new trial provided ineffective assistance by failing to subpoena Simmons' trial counsel to testify. "At the outset, we note that this ineffectiveness claim is arguably being made for the first time. Nevertheless, when the record is sufficient, as here, an appellate court may decide ineffectiveness issues without remanding the case when the remand would waste judicial and legal resources and serve no useful purpose."[16] We find again that Simmons has failed to demonstrate harm. As we discussed fully in Division 1 (d), each of Simmons' claims that his trial counsel was ineffective lacked merit. Trial counsel's testimony as to each claim, had he been present at the motion hearing, would not have altered our findings. Accordingly, this enumeration fails.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JUNE 17, 2003 —
RECONSIDERATION DENIED JULY 8, 2003 — ■

*Dwight L. Thomas,* for appellant.
*W. Kendall Wynne, Jr., District Attorney, Alan A. Cook, Assistant District Attorney,* for appellee.

---

[15] *Moore v. State,* 246 Ga. App. 163, 169 (9) (b) (539 SE2d 851) (2000).
[16] (Citation and footnote omitted.) *Laredo v. State,* 253 Ga. App. 155, 157 (2) (558 SE2d 742) (2002).