A05A0695. OLIVER v. THE STATE.
A05A0696. BASKERVILLE v. THE STATE.
(615 SE2d 846)

PHIPPS, Judge.

Amon Oliver and Jason Baskerville were tried by a jury and convicted of armed robbery. Baskerville was also convicted of kidnapping and aggravated assault. Both claim that the evidence was insufficient to support their convictions and that the trial judge was not properly designated to hear their case. Oliver also claims that his trial counsel was ineffective and complains of unreasonable delay in getting his case to this court. For reasons that follow, we affirm in both cases.

The evidence showed that on April 24, 2002, at approximately 9:40 p.m., Oliver and Baskerville came into Danny's BP Station in Hampton. The cashier, Elsie Duke, testified that Oliver held a gun to her side, walked her to the cash register and told her to give him the money. She took approximately $820 from the cash register, put it in a bag and gave it to him. Although Oliver was wearing a mask, it had holes for the eyes and mouth, and she recognized him because he "has a look of his own." She knew him because he and his little brother came into the store every day. She testified that he was wearing a white T-shirt and blue or black jogging pants. At trial, she also identified him as the person who had robbed her.

Raymond Cooper, another employee, testified that he was just inside the door to the service station when Baskerville came in and grabbed him, told him he had a gun, walked him to the back of the store with the gun in his side, made him get on the floor and tied him up. Baskerville was also wearing a mask with holes around his eyes and mouth. Cooper testified that he looked under the mask when Baskerville was trying to tie him up and that is when he knew who it was. He knew Baskerville because he had come into the store with Oliver and his little brother. Cooper also testified that, as he was being led to the back of the store, he looked into a mirror and saw Oliver running behind the counter with a gun. He testified that he had known Oliver for a long time.

Rosemarie Milby of the Hampton Police Department was the first officer to respond to the call at the service station. She found a pair of shoelaces in the area of the store where Cooper had been taken. Billy Ward of the Hampton Police Department responded to the call at the service station at about 10:50 p.m. After talking to Duke and Cooper, he had two suspects — Oliver and Baskerville. He then went to Oliver's house, which was about 150 to 200 yards from the service station. Oliver came to the door wearing clothing consistent with that described by Duke. Ward searched the house and found a BB gun and a pair of canvas tennis shoes with the laces missing in Oliver's

bedroom. Cooper testified that the gun looked "just like" the one Oliver was carrying when he went behind the counter. On April 25, Ward found a "black cotton-type sock cap" near a wooded area between the service station and the street where Oliver lived.

On April 25, Dennis Hall of the Henry County Sheriff's Department conducted a search at Baskerville's girlfriend's house, with her permission. Hall found a "wad" of cash with a rubber band around it on the floor behind a stereo cabinet. The cash consisted of one $100 bill, eleven $20 bills, eleven $10 bills, twenty-six $5 bills, and sixty-nine $1 bills, for a total of $629. Baskerville's girlfriend testified that Baskerville picked her up from work on the night of April 24 and that he came by at about 10:20 or 10:30 p.m. After they arrived at her house, she saw Baskerville counting money. He told her that Oliver was in trouble and that he had gotten money from his bank account to lend to him.

## Case No. A05A0695

1. Oliver claims that the evidence was insufficient to support the verdict based on a lack of opportunity for the victims to have seen beneath the masks worn by the robbers, an absence of fingerprint evidence and the state's failure to show that the BB gun seized from his house was one of the guns used in the robbery.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the appellant is no longer entitled to a presumption of innocence.[1] "An appellate court does not weigh evidence or determine witness credibility, but determines only if the evidence is sufficient under the standard of *Jackson v. Virginia*[2] to support a finding of guilt beyond a reasonable doubt."[3] Conflicts in testimony and questions about witness credibility are matters for the jury to resolve.[4] As long as there is some competent evidence, even though contradicted, to support each fact necessary for the state's case, the jury's verdict will be upheld.[5]

A person commits the offense of armed robbery when, "with [the] intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[6]

---

[1] *Nunnally v. State*, 261 Ga. App. 198 (1) (582 SE2d 173) (2003).
[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Nunnally*, supra (footnote omitted).
[4] *Johnson v. State*, 259 Ga. App. 452, 453 (2) (576 SE2d 911) (2003).
[5] Id.
[6] OCGA § 16-8-41.

Viewed in the light most favorable to the verdict, the evidence authorized the jury to find that both Duke and Cooper had the opportunity and ability to identify Oliver and that the gun taken from Oliver's house was the gun Oliver carried during the robbery. Fingerprint evidence was not essential to the state's case. The evidence was sufficient for a rational trier of fact to have found Oliver guilty of armed robbery beyond a reasonable doubt.

2. Oliver claims that the administrative order designating Senior Judge Ben Miller as the presiding judge in the case was defective.

On February 5, 2003, the Administrative Judge of the Sixth Judicial Administrative District issued an order granting a request for the assistance of Senior Judge Ben J. Miller to handle the criminal jury trial week of February 11-15, 2003, and authorizing Judge Miller to serve in the Superior Court of Henry County for that purpose. The order also provided that, "[f]or any cases which extend beyond this calendar, Judge Miller is fully authorized to preside over such cases for motions, trials, and any other actions until such cases are disposed." Oliver argues that the order did not comply with the requirements of OCGA § 15-1-9.1, and that it gave too much authority to Judge Miller because it allowed him to handle cases long after February 15.

Oliver first raised this issue in his amended motion for new trial, and argued it at the motion for new trial hearing. Our state appellate courts have made it clear that "parties cannot wait until after they see the result of the hearing to challenge a presiding judge's authority under OCGA § 15-1-9.1."[7] Oliver's failure to raise this issue prior to the commencement of trial precludes appellate review of this issue.[8]

3. Oliver claims that his trial counsel was ineffective because he failed to object to the order designating Judge Miller and failed to file a motion to suppress the evidence seized from Oliver's home.

> A defendant claiming ineffective assistance of counsel must show (1) that his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.[9]

We are not required to address both components of the test if the

---

[7] *Cammer v. State*, 263 Ga. App. 277 (1) (587 SE2d 656) (2003) (citation and punctuation omitted); see also *Hurst v. State*, 260 Ga. App. 708, 709 (2) (580 SE2d 666) (2003) (failure to timely challenge appointment under OCGA § 15-1-9.2).

[8] See *Cammer*, supra.

[9] *Parrish v. State*, 237 Ga. App. 274, 283 (10) (514 SE2d 458) (1999) (citations omitted).

defendant has made an insufficient showing on one.[10] And we will uphold a trial court's finding that counsel was effective unless it was clearly erroneous.[11]

(a) Oliver has not shown that his trial counsel was ineffective for failing to object to the order appointing Judge Miller because he has failed to show that he was denied a fair trial by virtue of the appointment order. As a result, he has not satisfied the prejudice component of the test.[12]

(b) Oliver claims that his trial counsel should have filed a motion to suppress the BB gun and tennis shoes seized from his house and that, without that evidence, the result of the trial would have been different.

The failure to file a motion to suppress does not constitute per se ineffective assistance of counsel; an appellant must make a strong showing that the evidence would have been suppressed had the motion been filed.[13] Oliver has failed to make that showing. The failure to file a motion to suppress evidence seized pursuant to a search warrant not shown to be invalid does not constitute ineffective assistance.[14]

4. Oliver claims that there was an unreasonable delay in getting his case to this court. He admits that this claim is not relevant to the substance of his appeal and seeks no particular relief from this court. As a result, we do not address this claim.

### Case No. A05A0696

5. Baskerville claims that the trial court erred by denying his motion for a directed verdict of acquittal at the close of the state's case. He argues that there was no in-court identification of him, that the state failed to produce fingerprint evidence and that the amount of cash found did not match the amount reported missing from the service station.

The standard of review for denial of a motion for directed verdict is the same as for determining the sufficiency of the evidence to support a conviction.[15] Thus, we construe the evidence in favor of the jury's verdict and determine whether a rational trier of fact could have found Baskerville guilty beyond a reasonable doubt of the

---

[10] *Simmons v. State*, 262 Ga. App. 164, 167 (1) (d) (585 SE2d 93) (2003).

[11] See *Dorsey v. State*, 265 Ga. App. 597, 600 (2) (595 SE2d 106) (2004).

[12] See *Strozier v. State*, 277 Ga. 78, 82 (8) (586 SE2d 309) (2003).

[13] *Quinn v. State*, 255 Ga. App. 744, 749 (5) (566 SE2d 450) (2002).

[14] *Fortson v. State*, 240 Ga. 5 (1) (239 SE2d 335) (1977); see also *Quinn*, supra.

[15] *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).

crimes for which he was convicted.[16]

Notwithstanding the absence of an in-court identification of Baskerville and the state's failure to present fingerprint evidence, Cooper's testimony concerning his on-the-scene identification was sufficient to authorize the jury to find that Baskerville perpetrated the crimes. The jury was authorized to conclude that the cash seized from Baskerville's girlfriend's house had been put there by Baskerville and to disbelieve his explanation as to the source of the funds. The evidence was sufficient for a rational trier of fact to have concluded beyond a reasonable doubt that Baskerville was guilty of the crimes for which he was convicted.

6. Baskerville claims that his convictions were void because the trial judge was not properly designated to hear his case. He argues that Judge Miller was not elected to serve in Henry County, that the order designating Judge Miller as a visiting judge did not comply with OCGA § 15-1-9.1 (f) and that trial counsel's failure to object to Judge Miller's appointment did not waive his right to raise the issue on appeal.

Baskerville first raised this issue in his second amended motion for new trial, and argued it at the motion for new trial hearing. Our state appellate courts have made it clear that "parties cannot wait until after they see the result of the hearing to challenge a presiding judge's authority under OCGA § 15-1-9.1."[17] Baskerville's failure to raise this issue prior to the commencement of trial precludes appellate review of this issue.[18]

*Judgments affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JUNE 20, 2005.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Sexton & Morris, Joseph S. Key, Lloyd J. Matthews*, for appellants.

*Tommy K. Floyd, District Attorney, James L. Wright III, Alicia C. Gant, Assistant District Attorneys*, for appellee.

---

[16] Id.

[17] *Cammer,* supra (citation and punctuation omitted); see also *Hurst,* supra (failure to timely challenge appointment under OCGA § 15-1-9.2).

[18] See *Cammer,* supra.