## A08A0978. DINKINS v. THE STATE.
(671 SE2d 299)

SMITH, Presiding Judge.

Willie Dinkins appeals his judgment of conviction and sentence for armed robbery. Following the denial of his amended motion for new trial,[1] he asserts the general grounds, the State's improper use of his pre-arrest and post-arrest silence for impeachment purposes, and his trial counsel's ineffectiveness in failing to object to the State's questioning on this point. We find no error and affirm.

1. We first consider the general grounds. Construed to support the verdict, the evidence shows that Dinkins's co-defendant, Roderick Young, pled guilty and testified against Dinkins at trial. Young told the jury that Dinkins willingly participated in the robbery and took the money from the cash register drawer. According to Young,

---

[19] (Punctuation omitted.) *Cockrell,* supra.

[20] Thomas Carlyle, Sartor Resartus, 112-121 (Charles F. Harrold ed.).

[1] A Bibb County jury found Dinkins guilty of armed robbery, but acquitted him of a charge of possession of a firearm during commission of a felony, on August 16, 2002. Judgment of conviction and sentence was entered the same day. His original appeal was dismissed by this court due to appellate counsel's failure to file a brief. Dinkins's application for a writ of habeas corpus was granted on the basis of ineffective assistance of appellate counsel, and his amended motion for new trial was filed on April 5, 2007. After a hearing in which the trial court received evidence, the motion was denied. This appeal followed.

Dinkins entered the store first to lure the clerk to the front so that Young could rob the register. The victim testified that the gunman ignored Dinkins while robbing the store, never looking at him or pointing the gun at him. After the robbery, Dinkins asked the clerk which way the gunman went, and then went in the same direction.

Within a few minutes, a police officer answering the robbery call saw a "suspicious vehicle" and stopped it "a couple of tenths of a mile" from the store. Young and Dinkins were in the car, and the mask used in the robbery and the cash drawer from the store register were in plain view in the vehicle. Dinkins also had money in his pocket matching the number and denomination of bills taken from the cash drawer.

A store videotape of the robbery was played for the jury. The investigator who secured the videotape from the store was questioned during the playing of the videotape, and pointed out that the robber ignored Dinkins and even "turned his back to him."

Dinkins testified that he simply went to the convenience store because he was hungry and wanted something to eat. He claimed he had no idea the co-defendant was going to rob the store. He acknowledged on cross-examination, however, that he and the co-defendant drove all the way across Macon to another nearby town in the early hours of the morning in order to get to this store; he denied knowing any convenience stores in Macon that were open all night.

While Dinkins claims Young's testimony was uncorroborated, "[e]ven slight evidence of corroboration is sufficient, and that evidence may be circumstantial. The sufficiency of such corroboration is a matter for the jury." (Citations omitted.) *Moses v. State*, 265 Ga. App. 203, 212 (6) (a) (593 SE2d 372) (2004). Dinkins's behavior prior to the robbery in driving with the co-defendant to another town, his actions during the robbery as testified to by the clerk and shown on the videotape, his following the gunman after inquiring which way he went, and his presence in the co-defendant's car with the mask and cash drawer in plain view and the apparent proceeds of the robbery in his pocket, all provide sufficient evidence from which the jury could find corroboration. This evidence was ample to support the jury's verdict.

2. Dinkins contends that the trial court erred by allowing the State to question him regarding his pre-arrest and post-arrest silence. But Dinkins has waived this issue by his failure to object at trial. *Landers v. State*, 270 Ga. 189, 190-191 (2) (508 SE2d 637) (1998); *Frazier v. State*, 247 Ga. App. 500, 501 (544 SE2d 198) (2001).

3. In a related enumeration of error, Dinkins contends that his trial counsel was ineffective in failing to object to the State's questions regarding his silence.

A defendant claiming ineffective assistance of counsel must show (1) that his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. We are not required to address both components of the test if the defendant has made an insufficient showing on one. And we will uphold a trial court's finding that counsel was effective unless it was clearly erroneous.

(Citations, punctuation and footnotes omitted.) *Oliver v. State*, 273 Ga. App. 754, 756-757 (3) (615 SE2d 846) (2005).

During the trial, Dinkins testified on direct examination that he knew the police told his co-defendant that Dinkins had given the police a written statement. Dinkins testified that while the police asked him to make a written statement, he did not give them one. The State then contended that Dinkins had opened the door to further questions about "why didn't he tell the police he wasn't involved in this." The trial court gave the State permission to examine Dinkins on this point.

On cross-examination, the State asked Dinkins a series of questions attacking his contention that he was an unwitting bystander to the robbery. The prosecutor asked Dinkins why he asked the clerk which way the robber went and then left in the same direction, why he did not tell the clerk that he knew the robber, why he did not stay to assist the police, why he had the dollar bills in his pocket, and why he got back in the car with Young after the robbery.

Only after this series of questions did the prosecutor ask Dinkins why, when police stopped the car, he did not "hop out of the car screaming 'I didn't know anything about this, I'm not in on it, I didn't do it'? Why?" Dinkins responded that "they didn't give me a chance" and "[t]hey wouldn't let me say anything." The prosecutor asked how the police could force Dinkins not to say anything, and only then did Dinkins respond, "Because they told me I had the right to remain silent." The prosecutor continued, "But you also had the right to speak to them didn't you?" and added, "Didn't say anything at all? You didn't say my buddy just robbed Circle K and held a gun to my head and made me get in this car?" to which Dinkins responded, "No, because they read me my rights." He elaborated, "That can be used against me in a court of law."

Once again the prosecutor asked why he did not speak when his co-defendant did, and Dinkins then acknowledged that he did give a statement "after we got to the police station." He testified that, although he gave no written statement, he gave the police an oral

statement disclaiming his involvement and implicating his co-defendant. He testified that he did not write the statement down "because I was on the edge and I needed an attorney." He further testified that he called the police back after he spoke to his mother and reiterated that "I didn't do this, it was my buddy." He testified that the police for some reason failed to testify to his repeated assertions that he was not involved.

The courts have provided a well-established exception for questions that incidentally involve reference to a defendant's silence, so long as those questions are directed to another, permissible ground of cross-examination.

> [A] prosecutor does not impermissibly comment on prearrest silence merely by showing that the accused's demeanor and conduct during and after the crime (but before an agent of the State questions him and before he knows he is being investigated) were inconsistent with a defense such as coercion or justification. In our view, defining "prearrest silence" to include the failure of an accused under the circumstances described here to report a crime or to seek police protection would unduly expand the scope and limits of the privilege against self-incrimination at the expense of the duty of the State to enforce the laws and the function of the courts to seek the truth.

(Citations, punctuation and footnote omitted.) *Morrison v. State*, 251 Ga. App. 161, 164-165 (3) (554 SE2d 190) (2001).[2]

As in *Morrison*, here the State questioned Dinkins regarding his "failure to report the crime against himself or to seek police protection from his assailant before police officers identified him as a participant or questioned him." Id. at 164 (3). The majority of the prosecutor's questions concentrated on the inconsistencies between Dinkins's testimony at trial and his conduct during and after the robbery, not his silence at the time of his arrest. It was Dinkins, not the prosecutor, who first raised the issue of his right to remain silent. Under these circumstances, nearly all the questions addressed to Dinkins clearly fall within the exception established in *Morrison*. And "[f]ailure to raise a meritless objection cannot constitute ineffective assistance of counsel. [Cits.]" *Wright v. State*, 265 Ga. App. 855, 858 (1) (c) (595 SE2d 664) (2004).

Assuming, without deciding, that the prosecutor's last few questions regarding Dinkins's post-arrest silence are not within the

---

[2] We note that the Georgia Supreme Court has granted certiorari in *Reynolds v. State*, 290 Ga. App. 44 (658 SE2d 815) (2008), specifically with respect to the rule established in *Morrison*.

scope of the holding in *Morrison*, any error was harmless because Dinkins has not shown that he was prejudiced by trial counsel's failure to object to those questions, or that the jury would have reached a different verdict if counsel had objected to those questions. Dinkins himself testified that he did not, in fact, remain silent, but spoke repeatedly to the police, and offered an explanation for his failure to speak earlier. See *Frazier*, supra, 247 Ga. App. at 502 (comment on appellant's silence harmless error because appellant's explanation of why he did not tell anyone about shooting was before jury). In addition, the majority of the State's cross-examination of Dinkins was directed not to any pre-arrest or post-arrest silence, but to attacking his contention at trial that he was forced by his co-defendant to participate in the robbery and to accompany him as he fled in the getaway vehicle.

In other words, only a relatively small part of the State's questioning referred to Dinkins's post-arrest silence, a silence which was almost immediately broken. Closing arguments were not recorded, and the record does not show that the State ever referred to the issue again. Dinkins has not demonstrated that the outcome of the trial was affected by this brief mention in the context of the permissible issue of Dinkins's demeanor and conduct during the crime under *Morrison*. *Kurtz v. State*, 287 Ga. App. 823, 826-827 (2) (652 SE2d 858) (2007).

Finally, the evidence of Dinkins's guilt includes his own testimony regarding his actions before, during, and after the robbery, the testimony of his co-defendant, the testimony of the store clerk, a videotape, viewed by the jury, showing his presence and actions during the robbery, and his discovery with his co-defendant in the getaway car with evidence of the robbery in plain view and the proceeds of the robbery in his pocket. In light of this overwhelming evidence of guilt, Dinkins "cannot show a reasonable probability that the jury would have had a reasonable doubt respecting his guilt" if his counsel had objected to any objectionable question. *Landers*, supra, 270 Ga. at 191 (4).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED NOVEMBER 13, 2008 —
RECONSIDERATION DENIED DECEMBER 16, 2008 — 

*Timothy W. Floyd*, for appellant.

*Howard Z. Simms, District Attorney, Dorothy V. Hull, Assistant District Attorney*, for appellee.