## A03A0578. NUNNALLY v. THE STATE.
### (582 SE2d 173)

JOHNSON, Presiding Judge.

Duane Nunnally was charged with trafficking in cocaine and obstructing a law enforcement officer. He was tried before a jury and convicted of both charges. He appeals, challenging the jury selection, evidentiary rulings, the sufficiency of the evidence, the validity of the verdict, and the court's failure to appoint a lawyer to represent him even though he was not indigent. Except for the issue of appointed counsel, the record clearly establishes that Nunnally's arguments are without merit. But it is unclear from the record whether Nunnally was diligent in attempting to hire an attorney and whether he may have been entitled to appointed counsel. We therefore remand the case for the trial court to consider that matter on the record.

1. On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant is no longer presumed innocent.[1] An appellate court does not weigh evidence or determine witness credibility, but determines only if the evidence is sufficient under the standard of *Jackson v. Virginia*[2] to support a finding of guilt beyond a reasonable doubt.[3] Conflicts in testimony are a matter of credibility for the jury to resolve.[4] And as long as there is some competent evidence, even though contradicted, to support each fact necessary for the state's case, the jury's verdict will be upheld.[5]

In the instant case, the state presented testimony that a confidential informant told agents of a drug task force that Nunnally was selling crack cocaine from his mobile home in the town of Daisy. Acting on the tip, agents placed Nunnally's home under surveillance while the informant entered it to buy cocaine. The informant later identified Nunnally as the person who had sold the cocaine to him.

Agents then obtained a search warrant for Nunnally's home, and executed it several days after the informant had bought cocaine there. As three agents entered the home, two men fled out the back door while a third man remained in the home. One agent stayed with the man in the home while the other two agents chased the men who had run into woods behind the residence. An agent identified Nunnally as one of the men fleeing from the home, and the agent saw Nunnally throw a bag into a tree. That bag was found to contain six smaller bags of suspected cocaine. Agents also found two bottles con-

---

[1] *Phoukphanh v. State*, 256 Ga. App. 580 (569 SE2d 259) (2002).

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Phoukphanh*, supra.

[4] Id.

[5] Id.

taining suspected cocaine in the area where Nunnally and the other man had run.

On the kitchen table in the home, agents found suspected cocaine residue in a small plastic bag similar to the six bags thrown by Nunnally during the chase in the woods. In a dresser drawer, they found drug transaction records along with a life insurance policy in Nunnally's name. Agents also found a radio scanner monitoring local police frequencies and $280 in the home.

All of the suspected cocaine was analyzed in the Georgia Bureau of Investigation crime laboratory. One quantity weighed 74.8 grams and was 79 percent cocaine, while another quantity weighed 9.4 grams and tested positive for cocaine. The bag of residue also tested positive for cocaine.

Having reviewed the evidence in the light most favorable to the verdict, we hold that there is sufficient evidence from which the jury was authorized to find beyond a reasonable doubt that Nunnally is guilty of trafficking in cocaine[6] and obstructing a law enforcement officer.[7] Nunnally's challenges to the sufficiency of the evidence supporting the verdict are without merit.

2. Nunnally complains that the trial court erred by not giving him the opportunity to question individual jurors who were excused for cause because of their relationships with him. In support of his complaint, Nunnally points to four prospective jurors excused by the court: one woman told the court that she could not be fair and impartial because she is related to Nunnally's mother, a man said that he would be influenced because he knows Nunnally well, another woman testified that she is related to Nunnally's father, and a second man stated that he could not be fair and impartial because he has known Nunnally all his life. Prior to excusing these four jurors, the trial court did not ask Nunnally if he had any questions for them. Nunnally did not object to the trial court's method or its excusing of the jurors.

By failing to timely object to the excusing of the jurors, Nunnally has failed to preserve this issue for appellate review.[8] Moreover, "[a]lthough a defendant has a right to individualized *responses* from each member of the panel, he is not entitled to question each juror individually."[9] Because the jurors here gave individual responses about their respective relationships with Nunnally, not to mention

---

[6] OCGA § 16-13-31 (a) (1) (knowing sale or possession of 28 grams or more of any mixture with a purity of 10 percent or more of cocaine is felony offense of trafficking in cocaine).

[7] OCGA § 16-10-24 (a) (knowing and wilful obstruction or hindrance of law enforcement officer lawfully discharging duties is a misdemeanor).

[8] *Denham v. State*, 218 Ga. App. 191, 192 (2) (a) (460 SE2d 869) (1995).

[9] (Citation omitted; emphasis in original.) *Walker v. State*, 271 Ga. 328, 329 (2) (519 SE2d 670) (1999).

the fact that Nunnally has not shown what further responses he hoped to elicit through further questioning, we find no reversible error.

3. Nunnally contends that the trial court erred in accepting the verdict because during the polling of the jury two jurors indicated that they did not agree with the verdict. A review of the trial transcript reveals that Nunnally's contention overstates what the two jurors said during the jury poll.

When the court asked one of the jurors if his verdict was freely and voluntarily made, the juror said, "I reckon." The judge explained that he could not accept that response and that the juror must tell him whether or not his verdict was free and voluntary. The judge then asked the juror again if his verdict was freely and voluntarily made, and the juror said, "Yes."

The next juror, when asked if the verdict was her verdict, stated, "Well I accept it as the verdict because so many. . . ." The judge then told the juror to listen to his questions and answer them. He asked her again if it was her verdict, and the juror said, "Yes. I accept it." The judge then asked if her verdict was made freely and voluntarily, and she said, "Yeah. He really — he didn't show no . . . reason for what he did." The court next asked if it was still her verdict, and the juror said, "Yes."

After the entire jury had been polled, the court asked Nunnally if he wanted the court to do anything before excusing the jurors. Nunnally did not object to the court excusing the jurors or ask the court to take any particular action; instead he simply stated that the two jurors had hesitated when polled. The court noted Nunnally's observation for the record and dismissed the jury.

By failing to raise an objection or make a motion in the trial court based on the jurors' responses when polled, Nunnally has not preserved the matter for appellate review.[10] Even if the issue were properly before us, we find no merit to Nunnally's contention that the two jurors did not agree with the verdict. It is apparent from their responses to the judge that the guilty verdict was theirs and was made freely and voluntarily.[11]

4. Nunnally argues that the trial court erred in denying his motion to order the state to disclose the identity of the confidential informant. The argument is without merit because the informant was not a witness to the offenses that form the basis of the prosecution.

[10] *Barker v. State*, 191 Ga. App. 451, 452 (2) (382 SE2d 115) (1989).
[11] See id.; *Walker v. State*, 188 Ga. App. 796, 797 (2) (374 SE2d 357) (1988).

OCGA §§ 24-9-21 (4) and 24-9-27 (d) provide for privilege against disclosure of the identity of a confidential informant who was not an eyewitness to the offense that forms the basis for the prosecution, although he or she may have seen the defendant in possession of the contraband at an earlier time, but did not participate in the offense. The informant, for evidentiary purposes, is considered a mere "tipster."[12]

In the instant case, the informant bought cocaine from Nunnally, and the drug task force then relied on that drug purchase to obtain a search warrant for Nunnally's mobile home. The state did not indict Nunnally for that sale of cocaine to the informant, and instead indicted him for cocaine trafficking based on the drugs found during the execution of the search warrant and for obstructing law enforcement officers based on his fleeing from the officers. The confidential informant was not present during the execution of the search warrant and was not a witness to the trafficking and obstruction offenses that form the basis of the instant prosecution. Under these circumstances, the informant was a mere tipster whose identity was absolutely privileged, and the trial court therefore correctly denied the motion to reveal his identity.[13]

5. Nunnally claims that the trial court erred in admitting a copy of the search warrant into evidence during the pretrial hearing on his motion to reveal the identity of the confidential informant. Nunnally, however, did not object to the admission of the warrant during the hearing, and he therefore cannot raise the issue for the first time on appeal.[14]

6. Nunnally asserts that the trial court violated OCGA § 24-5-4 (a) by allowing the state to introduce into evidence a copy, rather than the original, of the affidavit supporting the search warrant. The court actually allowed the copy of the affidavit into evidence both during the pretrial hearing on the motion to reveal the informant's identity and during the trial. It is unclear from Nunnally's brief whether he is now challenging the admission of the document during the hearing, the trial, or both. Regardless, Nunnally has failed to establish a basis for reversing his convictions.

As to the admission of the affidavit copy during trial, upon the state's tendering of the document, Nunnally affirmatively stated that he had no objections to it. He thus has waived the right to challenge its admission on appeal.[15] And during the pretrial hearing, he

---

[12] *Leonard v. State*, 228 Ga. App. 792, 794 (2) (492 SE2d 747) (1997).

[13] See *Bolt v. State*, 230 Ga. App. 760, 762 (2) (497 SE2d 406) (1998).

[14] See *Jones v. State*, 232 Ga. App. 505, 506-507 (3) (502 SE2d 345) (1998).

[15] See *Sirmans v. State*, 244 Ga. App. 252, 253 (1) (534 SE2d 862) (2000).

objected not that a copy violated the best evidence rule of OCGA § 24-5-4 (a), but that the affidavit was the statement of a drug task force agent rather than a statement of the confidential informant. Because the objection raised in the trial court is different from the argument made on appeal, there is nothing for us to review.[16]

7. Nunnally contends that the trial court erred in not appointing counsel to represent him. The court determined that Nunnally is not indigent, and he has not challenged that determination on appeal. Rather, he argues that the trial court should have given more consideration to whether he acted diligently in attempting to retain counsel before forcing him to go to trial without representation.

> Article I, Section I, Paragraph XIV of the 1983 Georgia Constitution provides that every person charged with an offense against the laws of this state shall have the privilege and benefit of counsel. And while a non-indigent defendant may forfeit this right by failing to act with reasonable diligence in obtaining an attorney's services, the trial court must exercise discretion in resolving the reasonable diligence issue by considering all factors which militate for or against the appointment of counsel. . . . Of course, the trial court's judgment in such matters is reversible only upon a manifest abuse of discretion.[17]

In the current case, the record shows that Nunnally was indicted on August 7, 2000. He hired an attorney who filed an entry of appearance as counsel of record on September 5, 2000. But on January 5, 2001, the attorney moved to withdraw as counsel of record. And on January 23, 2001, the trial court granted the motion, permitting counsel to withdraw. A month later, on February 23, 2001, Nunnally applied for appointed counsel on the ground that he could not afford to hire a lawyer. That same day the trial court denied the application, finding that Nunnally was not indigent and not entitled to appointed counsel.

On March 7, 2001, Nunnally appeared in court for jury selection without an attorney. Apparently there was some discussion between the court and Nunnally about the matter before the court reporter began transcribing what was said, because the transcript begins with Nunnally explaining at a bench conference that an attorney had told him to come to his office with more money on the following Friday and they would work out something. The court made no further

---

[16] See *Brown v. State*, 247 Ga. App. 741, 743 (2) (545 SE2d 114) (2001).

[17] (Citations and punctuation omitted.) *McQueen v. State*, 240 Ga. App. 15, 16-17 (522 SE2d 512) (1999).

inquiry into the matter other than to tell Nunnally that his income was too high to qualify him for appointed counsel and to encourage Nunnally to hire an attorney. The parties then selected a jury, with Nunnally proceeding pro se. After a jury was selected, the trial was continued for two weeks until March 21, 2001.

On March 21, Nunnally again appeared in court without a lawyer. The court stated that on two prior occasions it had highly recommended to Nunnally that he hire an attorney. The court asked him what had happened with the attorney he had said he would hire. Nunnally responded that he did speak with the lawyer but could not afford to hire him, so he was going to proceed on his own.

The court told Nunnally that he had the right to an attorney and again recommended that he have one. The court then asked Nunnally if he was freely and voluntarily waiving his right to an attorney. Nunnally again said that he could not afford to hire an attorney. The court asked if Nunnally's financial situation had changed since the prior determination that he was not indigent. Nunnally said only that it had changed in that he had paid all his bills. The court reiterated that Nunnally did not qualify for appointed counsel as an indigent. The judge said that he was concerned about Nunnally representing himself and that he was disappointed that Nunnally did not pursue retaining an attorney. Nonetheless, the court said, Nunnally had the right to represent himself and the court would allow it. The court then proceeded to hear testimony on Nunnally's motion to reveal the identity of the confidential informant. Before denying the motion, and before the jury was sworn in, the court appointed a lawyer to sit with and assist Nunnally throughout the trial, although the judge clarified that he was not appointing the lawyer to represent Nunnally.

When a nonindigent defendant appears for trial without retained counsel, the trial judge has a duty to delay the proceedings long enough to ascertain whether the defendant acted with reasonable diligence in attempting to obtain an attorney and whether the absence of an attorney is attributable to reasons beyond the defendant's control.[18] The judge has a duty to exercise his discretion to appoint counsel for a nonindigent defendant based on individual circumstances as authorized by Uniform Superior Court Rules 29.4 and 29.5.[19] Where the defendant purportedly waives the right to counsel, the record should reflect a finding by the court that the defendant validly chose to proceed pro se.[20]

Here, we simply cannot determine from the record whether the

[18] *Flanagan v. State*, 218 Ga. App. 598, 600 (462 SE2d 469) (1995).
[19] *McQueen v. State*, 228 Ga. App. 732, 734 (2) (492 SE2d 720) (1997).
[20] *McCall v. State*, 232 Ga. App. 684, 686 (1) (503 SE2d 578) (1998).

court delayed the proceedings long enough to ascertain whether Nunnally acted with reasonable diligence in attempting to obtain an attorney and whether the absence of an attorney was attributable to reasons beyond Nunnally's control. The court may very well have made the requisite determinations, but the transcript of the jury selection appears to start in the middle of a discussion about the matter, with Nunnally apparently responding to some inquiry by the court. Because the transcript of that critical juncture of the trial is incomplete, we cannot say with any certainty whether or not the matter was fully considered.

Accordingly, the case is remanded with direction that the trial court determine on the record whether Nunnally acted with or without diligence in attempting to retain counsel, and whether individual circumstances warranted appointment of trial counsel for the nonindigent Nunnally.[21] If the court finds that Nunnally was entitled to appointed counsel, then the court must order a new trial. If, however, the court finds that Nunnally waived his right to counsel by failing to act diligently, and that individual circumstances did not warrant the appointment of counsel, then Nunnally is not entitled to a new trial. If the court finds against Nunnally, he may directly appeal from that ruling.

*Case remanded with direction. Eldridge and Mikell, JJ., concur.*

DECIDED MAY 9, 2003.

*Earle J. Duncan III*, for appellant.
*J. Thomas Durden, Jr.*, District Attorney, *Carole E. Wall*, Assistant District Attorney, *Donna R. Sims*, for appellee.

---

[21] See *Hasty v. State*, 210 Ga. App. 722, 724-725 (1) (437 SE2d 638) (1993).