## A04A1767. JACKSON v. THE STATE.
(609 SE2d 207)

PHIPPS, Judge.

Antonio Jackson was tried by a jury and convicted of violating the Georgia Controlled Substances Act and of concealing a death.[1] On appeal, he claims that the evidence was insufficient to support his convictions and that the trial court erred by admitting hearsay and by failing to give a jury charge on equal access. For reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence showed that on February 15, 2000, Danny Lee Brown and Lawrence Leone twice contacted Jackson, also known as "Silk," to obtain crack cocaine. The first time Jackson was contacted, he went to Brown's house, sold crack cocaine to Brown and Leone, and left. The second time he was contacted, 15-year-old Corey Williams went with him to make the delivery. As soon as they received the cocaine, Brown and Leone divided it up and began smoking it. Jackson and Williams each

---

[2] Id. at 44-45 (1).

[3] See *Tim's Crane & Rigging, Inc. v. Gibson*, 278 Ga. 796 (604 SE2d 763) (2004).

[1] Jackson also pled guilty to theft by taking, but does not appeal that conviction.

asked if they could have a beer, and Brown said yes. The four then sat down to play cards around a card table. Shortly after they began, Williams took out a pistol, put it on the table and said, "I hope you don't mind if I set this right here." Brown said that he did not mind at all and went back to his bedroom to get his gun. Brown handed his gun to Williams, who then passed it to Jackson. When Brown asked for his gun back, Jackson said, "I am going to shoot you with it." Brown again asked for his gun, and Williams hit him in the head with the other gun. Leone testified that Brown and Jackson struggled for control of Brown's gun, and Williams "started jamming [Brown] in the head with the [other] pistol and it went off." Leone said that Brown then "kind of staggered backwards and hit the wall and he just slid down the wall."

After the gun went off, Williams ran outside, followed by Leone and Jackson. Jackson told Leone to come with him, but when they left the area, Jackson then told Leone that they needed to go back to Brown's house to get his fingerprints off Brown's gun. Leone testified that this was confusing to him because he had seen Jackson put the gun in his pants. He also testified that he was afraid and believed that "[t]he only reason he wanted me to go back there was to keep me from doing what I am doing right now." Back at Brown's house, Jackson said something to Leone that "implied that if I said anything the same was going to happen to me that happened to [Brown]."

Leone later drove Brown's truck down the road "to see what direction [Jackson and Williams] went," and then returned the truck. Leone went back to Brown's house a second time, took $20 out of Brown's wallet, then smoked crack cocaine in the bathroom. Leone admitted that he did this knowing that Brown lay dead in the next room.

For a couple of days after the shooting, Leone made phone calls to Brown's house in front of other people and knocked on the door to his house, hoping that someone else would worry that something had happened to Brown and call the police. When Leone finally called the police, he told them, "[Brown] hadn't answered his phone, nobody had seen him for two days, and I think something might have happened to him." At Brown's residence, police officers discovered Brown's dead body slumped against a wall and, near his right hand, a pink plastic baggy containing what was determined to be cocaine. Leone was interviewed at the police station and, during that interview, gave a statement consistent with his trial testimony. Prior to that time, Leone had not acknowledged that he was present when Brown was shot.

    1. Jackson claims that the evidence was insufficient to support his convictions.

(a) With respect to his conviction for selling and delivering cocaine, Jackson argues that there was no evidence linking the cocaine found near Brown's body and tested by the crime lab expert to the drugs he allegedly delivered to Brown and Leone. Jackson relies on Leone's testimony that, prior to February 15, he had bought crack cocaine from several people other than Jackson. Leone also testified that he bought cocaine on February 15 from two or three different people and that he was not sure if the cocaine tested by the state was the cocaine purchased from Jackson.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the appellant is no longer entitled to a presumption of innocence.[2] "An appellate court does not weigh evidence or determine witness credibility, but determines only if the evidence is sufficient under the standard of *Jackson v. Virginia*[3] to support a finding of guilt beyond a reasonable doubt."[4] Conflicts in testimony and questions about identity or witness credibility are matters for the jury to resolve.[5] As long as there is some competent evidence, even though contradicted, to support each fact necessary for the state's case, the jury's verdict will be upheld.[6]

Jackson was charged with knowingly selling and delivering cocaine in violation of the Georgia Controlled Substances Act. Leone testified that he and Brown contacted Jackson twice on February 15 to obtain crack cocaine and that, both times, Jackson called them back and subsequently delivered cocaine to them at Brown's house. Leone testified that he did not recall the color of the packaging Jackson used for the cocaine he delivered on February 15, but said that the cocaine Jackson sold was always packaged in "little baggies" that were either blue, pink or yellow. Leone said the other cocaine that he and Brown purchased that day was "naked" or unpackaged. Leone also testified that he and Brown began smoking Jackson's second cocaine delivery right after they bought it and were smoking it when they all sat down to play cards. This evidence was sufficient for the jury to conclude beyond a reasonable doubt that the cocaine in the pink baggy discovered next to Brown's body was the same cocaine sold and delivered by Jackson.

(b) Jackson claims that the evidence was not sufficient to support his conviction for concealing a death because he took no active steps to conceal Brown's death, but merely fled the scene.

[2] *Nunnally v. State*, 261 Ga. App. 198 (1) (582 SE2d 173) (2003).
[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[4] (Footnote omitted.) *Nunnally*, supra.
[5] *Johnson v. State*, 259 Ga. App. 452, 453 (2) (576 SE2d 911) (2003).
[6] Id.

. OCGA § 16-10-31 provides that a "person who, by concealing the death of any other person, hinders a discovery of whether or not such person was unlawfully killed is guilty of a felony. . . ." Immediately after Jackson saw Williams shoot Brown in the head, he fled from Brown's house. Jackson never called the police, and the evidence authorized the jury to find that he threatened to kill Leone if he told anyone what had happened. Leone testified that he had made it look as if he were trying, unsuccessfully, to reach Brown so that someone else might become concerned about Brown and call the police. From this testimony, the jury could infer that Leone waited several days to call the police at least in part because he was afraid that Jackson would kill him. Based on the evidence presented, the jury was authorized to conclude that Jackson's threat to Leone effectively hindered the discovery of Brown's body and, thus, to find Jackson guilty of concealing Brown's death.

2. Citing *Baugh v. State*,[7] Jackson claims that the trial court erred by permitting the state to elicit hearsay testimony from two police officers.

Marietta Detective Thomas Malony testified that Leone had told him that "Silk" had delivered cocaine to Brown's residence on February 15. Jackson did not object to Malony's testimony and therefore waived any error related to its admission.[8] Over objection, Marietta Police Officer Tony Langley testified that Leone had told him that he had received crack cocaine from "Silk" on the 15th.

In *Woodard v. State*,[9] the Supreme Court of Georgia clarified that a witness's prior consistent statement is admissible only where (1) the veracity of the witness's trial testimony has been placed in issue at trial, (2) the witness is present for trial, and (3) the witness is available for cross-examination. And a witness's veracity is placed in issue so as to allow the introduction of a prior consistent statement only if, during cross-examination, affirmative charges of recent fabrication, improper influence or improper motive are raised.[10]

In *Baugh*,[11] the Court applied the *Woodard* standard to testimony by the lead investigating detective in which he recited the out-of-court statements of five witnesses who had been called by the state and had testified before the detective was called. The Court held that because the veracity of four of the witnesses was not placed in issue, the witnesses' prior consistent statements were hearsay and

---

[7] 276 Ga. 736, 738 (2) (585 SE2d 616) (2003).
[8] See *Moore v. State*, 246 Ga. App. 163, 166 (5) (539 SE2d 851) (2000).
[9] 269 Ga. 317, 320 (2) (496 SE2d 896) (1998).
[10] Id.
[11] Supra.

were inadmissible. Jackson argues that *Baugh* requires us to reach the same conclusion.

We disagree because the veracity of Leone's trial testimony was placed in issue at trial. During cross-examination, Jackson's attorney asked Leone what he was getting in exchange for his trial testimony. Leone admitted that he had been indicted for concealing a death, burglary, theft by taking, tampering with evidence and obstruction of an officer and that he was on probation at the time of the shooting. Leone further admitted that it was his understanding that he would be released after he testified in the cases against Jackson and Williams, assuming that the trial court accepted the state's recommendation.[12] Jackson's attorney concluded the cross-examination by asking, "So they are holding this sentence over your head to see how you do in these two trials?" This questioning at the very least implied that Leone's testimony was influenced improperly by the possibility of being released from custody.[13]

Jackson also argues that it is significant that Langley testified before Leone testified and was cross-examined. It is true that Leone had not testified and that his credibility had not yet been attacked on cross-examination when Langley's testimony was admitted, but Leone did later testify to statements with which Langley's testimony would be consistent. "[I]ntroducing such evidence prior to eliciting an in-court statement runs the risk that the witness's credibility is never attacked and that the evidence is subsequently rendered inadmissible."[14] But here, Leone's credibility was eventually attacked on cross-examination and Langley's testimony was properly admitted as a prior consistent statement.[15]

3. Jackson claims that the trial court erred by failing to give his requested charge on equal access. Jackson requested the following instruction: "I charge you that if you determine from the evidence that person[s] other than the defendant[ ] had equal opportunity to possess[ ] or place the article of contraband upon the described premises, then in that event you should acquit the defendant." He argues that the charge should have been given because there was evidence that other people had delivered crack cocaine to Brown's house on the day of his death. The trial court did not give the charge based on its determination that the charge was not adjusted to the facts.

---

[12] Leone was incarcerated on February 18, 2000, and was still incarcerated at the time of Jackson's trial, which began on September 23, 2002.

[13] See *Johnson v. State*, 241 Ga. App. 448, 451 (3) (526 SE2d 903) (1999) (a witness's veracity may be placed in issue expressly or impliedly).

[14] *Sterling v. State*, 267 Ga. 209, 213 (9) (477 SE2d 807) (1996).

[15] See id.

If the state presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband.[16] "The equal access rule entitles a defendant to acquittal where the only evidence of possession is the defendant's ownership or control over the premises, and the defendant can show that others recently had access to the premises."[17] "It is simply a defense available to the accused to whom a presumption of possession flows."[18]

The equal access rule is not applicable here for two reasons: (1) Jackson was not charged with possessing cocaine, but with selling and delivering cocaine;[19] and (2) because the state never sought to prove that Jackson owned or controlled Brown's residence, no presumption of ownership arose and the equal access defense was not available.[20] Thus, the trial court did not err by failing to charge the jury on equal access.[21]

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED JANUARY 18, 2005.

*Derek H. Jones*, for appellant.
*Patrick H. Head, District Attorney, Amelia G. Pray, Irvan A. Pearlberg, Assistant District Attorneys*, for appellee.

---

[16] *Jones v. State*, 254 Ga. App. 863, 865 (2) (564 SE2d 220) (2002).

[17] (Citations omitted.) Id.

[18] (Punctuation and footnote omitted.) *Nation v. State*, 252 Ga. App. 620, 624 (5) (556 SE2d 196) (2001).

[19] See *Blasengame v. State*, 187 Ga. App. 501, 502 (2) (370 SE2d 797) (1988).

[20] See *Jones*, supra.

[21] See *Nation*, supra.