## A05A0877. BROWN v. THE STATE.
### (619 SE2d 759)

PHIPPS, Judge.

David Neil Brown was tried by a jury and convicted of one count of armed robbery and two counts of kidnapping. Brown was tried with Antwan Owens and Brandi Shuman in connection with the robbery of a Subway store in Rincon. On appeal, Brown claims that the evidence was insufficient to support the verdict and that the trial court erred by admitting evidence in violation of the court's ruling on a motion in limine, by admitting similar transaction evidence and by admitting a custodial statement of co-defendant Shuman, who did not testify at trial. For reasons that follow, we affirm.[1]

Viewed in the light most favorable to the verdict, the evidence showed that on May 23, 2000, at approximately 11:20 p.m., the Rincon Subway store was robbed by two men wearing black pantyhose over their faces. One of the men was armed with what appeared to be a revolver. Both men forced two employees back into the store as they were leaving for the night. The armed man made one of the employees open a safe containing $400 in rolled coins, which were stored in a green basket.[2] The men also made that same employee obtain a surveillance tape from the store's video camera. They then made both employees get under a desk at the back of the store. The men left with the money in the basket and the videotape.

The victims described the robbers as black men wearing long-sleeved shirts and long pants, one in jeans and one in grey pants. One of the victims identified the gun introduced at trial as consistent with the gun used in the robbery. She also said that the green basket introduced at trial looked like the basket that had been used by Subway to store change.

At approximately 11:30 that night, Shuman, Owens and Brown arrived in Shuman's car at the residence of Janelle Smith and

---

[1] We note that the state has failed to file a brief on appeal.
[2] The rolled coins had come from Citizen's Bank, which was located next door to the store.

Jennifer Maddox (now Jennifer Young), which was less than five minutes from the Subway store. Shuman parked in the back of the house, which was unusual, and asked Smith to borrow her car. Smith refused. Shuman left to go to the store to get Black & Mild cigars, presumably for Owens and Brown. At some point after they arrived, Owens took a bag from Shuman's car and put it into one of the rooms in the house. Shuman, Owens and Brown took the bag with them when they left.

Rincon Police Detective Martin Runge investigated and recovered two black pantyhose masks and a $5 bill at the scene of the robbery. At trial, Runge read a statement he had taken from Shuman:

> On the night of May 23rd, 2000, Antwan, myself and Neno[3] arrived to Jennifer's house at 11:00 P.M. Janelle was home at the time and Jennifer was there too. The only time Neno and Antwan was not in my eyesight is when they smoked outside on the porch. I left by myself around 12:00 to 12:30 to go and get some Black and Milds for them. I came straight back. My prior knowledge is that Maurice [Young] and Twan just mentioned that they would get away with it if they done it (Subway). My baby, Twan, was just like, "Yeah. Uh-huh." He told me that he was too scared and he didn't want to do anything to come back here. . . . This is all I know about the armed robbery at Subway.

Shuman had worked at the Subway store for one day, several weeks before the robbery, and had never returned.

Ricky Dailey of the Effingham County Sheriff's Department used a confidential informant to conduct a controlled purchase of a gun from someone with the nickname Neno.[4] The informant later identified Brown as the seller, based on a photograph taken of Brown at the time of his arrest. After the purchase, a detective recovered the gun from the informant and took money from Brown that had been used to make the purchase. The detective identified the gun introduced at trial as the same gun he had recovered from the informant.

Brown was arrested and then searched. The officers retrieved two Black & Mild cigars, one pair of leather gloves with a pair of latex gloves inside, $16 in U. S. currency and two rolls of pennies. Each penny wrapper had a name and telephone number on it. The people who had written their names and numbers on the rolls had exchanged

---

[3] Runge testified that Brown's nickname is Neno.

[4] Dailey testified that his purpose for the gun involved another investigation. The "other investigation" was another armed robbery, but the jury was not informed of that fact.

their pennies at the Citizen's Bank in Rincon, the same place where Subway obtained its change.

On June 2, 2000, officers executed a search warrant at Brown's residence. A search of Brown's bedroom yielded two empty penny wrappers (one of which contained one of the same names and telephone numbers as previously found on Brown's person), a green plastic basket (found underneath the bed), grey pants, denim jeans and two Black & Mild cigars.

Brown testified that he knew the informant, who was identified at trial, and that he had agreed to purchase marijuana for him, but denied that he ever sold him a gun. He explained that he had found some penny wrappers and used them to roll pennies. Brown said that he did have a green basket that he used to hold rocks he had collected, but that the basket introduced at trial did not look like his basket. Brown testified that he was at home with his family on the night of the robbery. Two of Brown's sisters also testified that he was at home that night.

1. Brown claims that the evidence was insufficient to support the verdict. He points out that neither of the robbery victims could identify the robbers or give a detailed description of them and that no fingerprints were obtained. He also argues that none of the physical evidence introduced at trial was shown to have come from the commission of the crime or to have been used in the commission of the crime.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the appellant is no longer entitled to a presumption of innocence.[5] "An appellate court does not weigh evidence or determine witness credibility, but determines only if the evidence is sufficient under the standard of *Jackson v. Virginia*[6] to support a finding of guilt beyond a reasonable doubt."[7] To support the verdict, circumstantial evidence must exclude only all reasonable hypotheses save defendant's guilt, not every inference or hypothesis.[8]

> Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused is primarily a question for determination by the jury. This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright

---

[5] *Nunnally v. State*, 261 Ga. App. 198 (1) (582 SE2d 173) (2003).

[6] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[7] *Nunnally*, supra (footnote omitted).

[8] See *Harris v. State*, 223 Ga. App. 661, 663 (478 SE2d 458) (1996).

and intelligent jurors. Only where the evidence is insupportable as a matter of law may the jury's verdict be disturbed, even where the evidence is circumstantial.[9]

The evidence in this case was far from overwhelming, nevertheless, we will not disturb the jury's verdict. The evidence was sufficient for a rational trier of fact to have found Brown guilty beyond a reasonable doubt of the charged offenses.[10]

2. Brown claims that the trial court erred by admitting evidence that he may have possessed a firearm that was used during another armed robbery. He argues that the evidence admitted violated the court's ruling on a motion in limine.

Prior to trial, Brown requested that the state's witnesses be prohibited from making references to the similarity between the gun allegedly purchased from him and a gun used in another armed robbery. The court ruled that the prosecution could mention only that the gun was obtained in connection with another investigation. The detective's testimony was that the "purpose for the weapon involved another investigation." There was no further mention of the other investigation. The detective's testimony did not violate the court's ruling.

3. After the gun purchase had been completed and before Brown was arrested, a detective approached Brown and asked his age. The detective testified that because Brown was under the age of 18, he was not allowed to possess a firearm. Brown claims that this was an improper attempt to introduce evidence of an independent criminal act.

The detective's testimony related the circumstances surrounding Brown's arrest, and was admissible.[11] Moreover, because it was admissible as original evidence, any argument that it was inadmissible as similar transaction evidence must be rejected.[12]

4. Brown claims that the trial court should not have allowed Shuman's custodial statement to be read to the jury. He argues that he was denied the opportunity to cross-examine a witness whose testimony suggested his participation in a scheme to rob Subway.

In fact, Shuman's statement was that, prior to the robbery, Owens and Maurice Young had discussed the fact that they could

---

[9] *Tweedell v. State*, 248 Ga. App. 187, 189 (546 SE2d 306) (2001) (citation and punctuation omitted).

[10] See id.

[11] See *Lenear v. State*, 239 Ga. 617, 619 (3), (4) (238 SE2d 407) (1977); see also *Brumelow v. State*, 239 Ga. App. 119, 123 (5) (520 SE2d 776) (1999) (all of the circumstances surrounding an arrest are admissible for whatever value the jury wants to place on them).

[12] See *Quinn v. State*, 222 Ga. App. 423, 425 (2) (b) (474 SE2d 297) (1996).

successfully rob the Subway store. Brown's name was not mentioned as a participant in that discussion. His claim therefore lacks merit.
*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED AUGUST 11, 2005.

*James K. Kidd*, for appellant.
*Richard A. Mallard, District Attorney*, for appellee.