A11A1956. STROZIER v. THE STATE.

(724 SE2d 446)

DILLARD, Judge.

Following a trial by jury, Daryl Strozier was convicted of forcible rape. Strozier appeals this conviction, arguing that (1) the trial court improperly denied his request to learn the identity of an informant who witnessed events leading up to the rape, (2) the evidence against him was insufficient, and (3) the State failed to establish venue. For the reasons set forth infra, we affirm Strozier's conviction.

---

Viewed in the light most favorable to the jury's verdict,[1] the record shows that late one night in May 1995,[2] Daryl Strozier, who was 15 at the time, and three other young men—Patrick McFarland, Michael Carwell, and Willie McFarland—were walking the streets of their neighborhood when they happened upon the victim. What occurred next was disputed at trial.

According to the young men, all of whom testified, the encounter with the victim began amicably when she offered to have sex with Strozier in exchange for help obtaining crack cocaine. All four described a situation in which the victim and Strozier hugged and kissed before walking into a nearby wooded area. And while the victim admitted at trial that she had used a significant amount of cocaine the night before and had been drinking alcohol on the night in question,[3] she vehemently denied offering sex for drugs. Instead, she testified that the young men approached her on the street and pulled her into a wooded area, where she was brutally beaten and raped by Strozier and Patrick McFarland.

Despite the men's consistent claim that the encounter with the victim began on amicable terms, only Strozier testified that the intercourse between the two was or remained consensual, although he admitted that Patrick McFarland then raped the victim and that the two beat her afterward when she "wouldn't leave him alone." The other men, however, described a far different turn of events.

Patrick McFarland testified that he followed Strozier and the victim into the woods and that the victim began to fight Strozier and yelled for him to stop. He then described a horrific scene in which he and Strozier both raped the victim, striking her about the head and laughing while the other took his turn. McFarland also claimed that the victim was further beaten after she pulled Strozier's ear.[4]

As for Michael Carwell, he testified that after Strozier and the victim entered the woods, he could hear the victim yelling for Strozier to "stop" and "quit." He further testified that the victim was hit after Patrick McFarland went into the woods, and that he witnessed the victim fighting Strozier and yelling for him to stop as he struck her while engaging in forcible intercourse. Additionally, Carwell witnessed Strozier dragging the victim naked across the ground and both Strozier and Patrick McFarland striking her in the head and kicking her.

---

[1] *See Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

[2] We note that Strozier's appeal was apparently "orphaned" years ago and has reached us by way of the trial court's having granted a motion for out-of-time appeal.

[3] It is undisputed that cocaine and alcohol were found in the victim's system on the night of the rape.

[4] Patrick McFarland pleaded guilty to rape prior to testifying against Strozier.

Willie McFarland testified to much of the same—i.e., that the victim began to resist Strozier and to yell when the two reached the wooded area. And although he did not remain at the scene for the entire encounter, McFarland did see Strozier holding the victim down, both with their clothing removed.

Finally, the victim detailed her version of what transpired in the woods. She described being dragged into the bushes while the men struck her and called her names, all the while laughing. In the darkness, she could only see Strozier's face. And although she fought and screamed, she was pulled by her legs and hair, struck on the ear so hard that her eardrum perforated, kicked in the face, and bit on the shoulder and chest by Strozier. The victim also described how she was hit in the head and held down as Strozier forced himself upon her.

When the horrific ordeal ended, the victim eventually made her way to a nearby house and obtained help.[5] The officer who responded found her beaten, bloodied, and hysterical. She was transported to a hospital, and the treating physician testified to observing injuries consistent with a recent beating. The doctor described—and photographic evidence reflected—bruises and marks consistent with repeated blows to the back, scratches from being dragged and/or kicked, a perforated eardrum, a shoe imprint on the victim's backside, and "extreme trauma" to the genital area. The doctor found no indication of consensual intercourse. And the victim was so emotionally traumatized that she required hospitalization for nearly two weeks.

Thereafter, law enforcement identified the crime scene after the victim's grandmother returned to the area where she had left her granddaughter on the night in question. The victim's belongings were recovered from the scene, including a bra that had been torn apart from the front, a pair of underwear, a wristband, and a broken bracelet.[6] Officers canvassed the area and were able to identify Carwell and Willie McFarland through "street talk" regarding the attack. Strozier and Patrick McFarland were then identified and arrested based on the police interviews and physical evidence. The victim subsequently identified Strozier in a photographic lineup, and he was thereafter tried as an adult and convicted by a jury. This appeal follows.

At the outset, we note that after a defendant has been convicted, "we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of

---

[5] According to the men, the victim calmly left the woods with them before suddenly fleeing. But the victim said that she ran away from the men and eluded chase.

[6] The victim's grandmother also testified to finding a shirt that belonged to the victim, but she threw it away out of embarrassment because it appeared to be covered in dried blood and a white substance.

innocence."[7] And on appeal, we do not weigh the evidence or determine witness credibility, "but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[8] With these guiding principles in mind, we will now address each of Strozier's enumerations of error in turn.

1. Strozier first argues that he was denied due process when the trial court refused to require the identification of an informant who witnessed the events leading up to what transpired in the woods. Strozier argues that the informant served as an "informer witness," that his or her identification should have been revealed as the "only witness not also involved" in the attack, and that the trial court committed an error of constitutional magnitude when it refused to require such identification. We disagree.

OCGA § 24-9-21 and OCGA § 24-9-27 create a "privilege against disclosure of the identity of a confidential informant who was not an eyewitness to the offense that forms the basis for the prosecution, although he or she may have seen the defendant . . . at an earlier time, but did not participate in the offense."[9] Indeed, the nondisclosure of a confidential informant's identity "encourages assistance, protects the future usefulness of the informant, and protects the safety of the informant, and is a matter of sound public policy within the statutes."[10]

Moreover, whether or not a confidential informant's identity is discoverable "rests within the sound discretion of the trial court, which discretion can be exercised only after the trial court has heard evidence as to the relevance, materiality, and necessity of disclosure from the defense."[11] And when the issue concerns disclosing the identity of an informer-witness (a person used to establish facts upon which to base a prosecution) and/or an informer-participant (a person used to obtain evidence), the trial court must apply the *Roviaro v. United States* balancing test[12] if, pursuant to *Brady v.*

---

[7] *Powell*, 310 Ga. App. at 144 (punctuation omitted).

[8] *Id.* (punctuation omitted).

[9] *Leonard v. State*, 228 Ga. App. 792, 794 (2) (492 SE2d 747) (1997); *see also* OCGA § 24-9-21 (4) ("There are certain admissions and communications excluded on grounds of public policy. Among these are[ ] . . . [s]ecrets of state . . . ."); OCGA § 24-9-27 (d) ("No official persons shall be called on to disclose any state matters of which the policy of the state and interest of the community require concealment.").

[10] *Leonard*, 228 Ga. App. at 794 (2); *see also Thornton v. State*, 238 Ga. 160, 163 (2) (231 SE2d 729) (1977) ("The public policy underlying [the informer's privilege] is to protect and encourage the flow of information to law enforcement officials.").

[11] *Leonard*, 228 Ga. App. at 795 (2).

[12] 353 U. S. 53, 62 (I) (77 SC 623, 1 LE2d 639) (1957) ("The problem [of disclosure] is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure

*Maryland*,[13] the informer's identity is required to be disclosed.[14] On the other hand, our Supreme Court has explicitly held that "if the trial court initially determines that the informer was merely a pure tipster, his identity would be privileged, and no further inquiry would be necessary."[15]

In the case sub judice, Strozier filed a motion to reveal the identity of an informant for the State, but law enforcement opposed identifying the informant and requested that the court conduct an in camera review of the informant's proposed testimony. Strozier sought to interview the informant regarding the victim's demeanor prior to the alleged assault. Specifically, he argued that the other witnesses to her behavior—Patrick McFarland, Willie McFarland, and Michael Carwell—lacked credibility due to their involvement in the attack, but the State countered that neither Carwell nor Willie McFarland were actual participants. The State further argued that the informant's testimony would be consistent with other testimony—i.e., that the victim first encountered Strozier while seeking drugs—and that the informant did not witness the actual rape.

The trial court conducted an untranscribed, in camera interview with the informant and then stated on the record that nothing indicated that the informant was an eyewitness to the attack, and that the informant had only seen the victim when she was on the street with the men and was of the opinion that the victim was intoxicated and seeking drugs at that time. Thus, the trial court determined that it was not necessary to identify the informant and denied Strozier's motion accordingly.

Under the foregoing circumstances, the trial court correctly denied the motion to reveal the informant's identity when the informant was a mere tipster.[16] And while the confidential informant

---

erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.").

[13] 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process [when] the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[14] *See Moore v. State*, 187 Ga. App. 387, 389 (2) (370 SE2d 511) (1988). *See generally Thornton*, 238 Ga. at 163-65 (2) (discussing the interplay between *Brady* and *Roviaro* in the context of informer-witnesses and informer-participants).

[15] *Thornton*, 238 Ga. at 165 (2); *see Branch v. State*, 248 Ga. 300, 301 (2) (282 SE2d 894) (1981) (recognizing that *Thornton* "held that when the trial court initially determines that the informer was merely a tipster, his identity would be privileged").

[16] *See Nunnally v. State*, 261 Ga. App. 198, 201 (4) (582 SE2d 173) (2003) (trial court properly denied motion when the informant "was not present during the execution of the search warrant and was not a witness to the trafficking and obstruction offenses that form[ed] the basis of the . . . prosecution" although informant had earlier purchased drugs from

saw the victim and Strozier interact prior to entering the wooded area, the informant did not witness the actual rape—the offense forming the basis of Strozier's prosecution—and the informant was not a participant in the attack.[17] Thus, the trial court did not err in denying the motion and was not required to conduct further inquiry.[18]

2. Strozier next argues that the evidence against him was insufficient to sustain a conviction for forcible rape. We disagree.

On appeal, Strozier more or less attacks the credibility of the victim by highlighting differences between her account of what transpired on the night in question and the descriptions given by Strozier, the other men who were present, and statements the victim made to police that same night. He further argues that the victim's testimony was insufficient to establish that any acts of violence resulted in the sexual encounter and that the victim's beating did not occur until after the two had engaged in intercourse. These arguments are wholly without merit.

The offense of rape is committed when a person "has carnal knowledge of . . . [a] female forcibly and against her will . . . ."[19] It is well established that "a victim's testimony, without more, is sufficient to sustain a conviction for rape . . . ."[20] And here, the evidence against Strozier, including the victim's testimony, the testimony of eyewitnesses to the act, the examining physician's testimony, and the photographic evidence, all detailed supra, overwhelmingly supported a conviction for forcible rape.[21] It was for the jury "to determine the

---

defendant); *see also Dyer v. State*, 162 Ga. App. 773, 774 (2) (293 SE2d 42) (1982) ("[Because] the informant was not a participant or a witness in the overt acts elemental to the conspiracy, the informant was not a decoy, but merely a tipster. Therefore, the trial court correctly refused to compel disclosure of the informant's identity." (citation omitted)).

[17] *Compare Simmons v. State*, 198 Ga. App. 121, 122 (400 SE2d 679) (1990) (physical precedent only) (trial court erred in denying motion when informant was present and witnessed the offense that formed basis of prosecution); *Moore*, 187 Ga. App. at 391 (2) (trial court erred in denying motion when informant was "the only witness in a position to amplify or contradict the testimony of the appellant and the police officer" when informant was a witness to the offense that formed the basis of prosecution (punctuation omitted)). *See generally Roviaro*, 353 U. S. at 64 (II) (holding that government committed prejudicial error when the informant was "the sole participant, other than the accused, in the transaction charged" and, thus, "the only witness in a position to amplify or contradict the testimony of government witnesses").

[18] *See Leonard*, 228 Ga. App. at 796 (2) (trial court properly denied motion when informant "was not present, did not participate in the arrest, or take part in the offense"); *Ramsay v. State*, 175 Ga. App. 97, 98 (2) (332 SE2d 390) (1985) (trial court properly denied motion when "officer stated that the informant was a tipster and was not a decoy, witness, or participant" to or in the offense); *see also Nunnally*, 261 Ga. App. at 201 (4); *Dyer*, 162 Ga. App. at 774 (2).

[19] OCGA § 16-6-1 (a) (1).

[20] *Siharath v. State*, 246 Ga. App. 736, 739 (2) (541 SE2d 71) (2000).

[21] *See, e.g., Clark v. State*, 197 Ga. App. 318, 320 (1) (398 SE2d 377) (1990) (despite lack

credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence."[22] Accordingly, this enumeration is likewise without merit.

3. Finally, Strozier contends that the State failed to establish venue. Once again, we disagree.

OCGA § 17-2-2 requires that criminal actions "be tried in the county where the crime was committed, except as otherwise provided by law."[23] Venue is a jurisdictional fact and "an essential element in proving that one is guilty of the crime charged."[24] The State must prove venue beyond a reasonable doubt, and the failure to do so "renders the verdict contrary to law, without a sufficient evidentiary basis, and warrants reversal."[25] And here, the testimony of the victim's grandmother first established the exact location of the crime scene. The victim later testified in detail as to where she encountered Strozier, where she was pulled into the woods and raped, and where she escaped, and she testified that the events on the night in question took place in Troup County. As Strozier has offered no evidence to the contrary, "we conclude that the State met its burden of proving beyond a reasonable doubt that venue of the crime charged is properly in [Troup] County."[26] Strozier's enumeration is without merit.[27]

Accordingly, for all the foregoing reasons, we affirm Strozier's conviction.

*Judgment affirmed. Mikell, P. J., and Boggs, J., concur.*

DECIDED FEBRUARY 29, 2012.

*Jimmonique R. S. Rodgers*, for appellant.

---

of physical trauma and defendant's claim that sex was consensual, sufficient evidence of forcible rape when victim testified that she was forced to submit to intercourse against her will); *McKenzie v. State*, 187 Ga. App. 840, 840-43 (371 SE2d 869) (1988) (sufficient evidence to support convictions for rape when victims testified and examining physicians testified to victims having injuries consistent with nonconsensual intercourse).

[22] *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) (punctuation omitted); *see also Littleton v. State*, 225 Ga. App. 900, 901 (1) (485 SE2d 230) (1997) (holding that question of whether victim actually consented to intercourse was an issue of witness credibility for the jury); *In the Interest of F. T.*, 165 Ga. App. 4, 4 (299 SE2d 112) (1983) (same).

[23] OCGA § 17-2-2 (a).

[24] *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000).

[25] *Id.* at 901-02 (punctuation omitted).

[26] *Sewell v. State*, 302 Ga. App. 151, 155 (3) (690 SE2d 634) (2010) (punctuation omitted).

[27] *See Branesky v. State*, 262 Ga. App. 33, 35 (2) (584 SE2d 669) (2003) (venue established when "child testified that the crime took place at a certain location, and the deputy testified that the location identified by the child is in Meriwether County").

*Peter J. Skandalakis, District Attorney, Andrea A. Newton, Assistant District Attorney*, for appellee.